Richmond

## CHARLES LEWIS ELLISON

v.

## COMMONWEALTH OF VIRGINIA

October 6, 1978.

Record No. 771488.

Present: All the Justices.

W. *Thomas Knowles (J. Wayne Sprinkle,* on brief) for appellant.

*Robert E. Bradenham, II, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief) for appellee.

CARRICO, J., delivered the opinion of the Court.

The defendant, Charles Lewis Ellison, was convicted by a jury of robbery and murder and, in accordance with the verdicts, he was sentenced to serve two life terms in the penitentiary. The defendant seeks reversal on the ground that the trial court erred in refusing to permit a witness to testify before the jury that a third party had confessed to the robbery and murder with which the defendant was charged.

The record shows that on September 10, 1976, Ernest Marks, night manager of "Carma's Chicken" in Portsmouth, was mortally wounded by a shotgun blast during the course of a robbery committed by three assailants. In the robbery, Marks' credit cards, $100 in cash, and a radio were stolen.

On November 16, 1976, as part of an undercover "fencing" operation, agents of the Federal Bureau of Investigation purchased several of the credit cards which had been stolen from Marks. This transaction led to a meeting on December 10 between the defen-

dant and two of the agents, who posed as members of the underworld interested in employing the defendant as a "hit man" and in helping him "to get out of the area" to avoid arrest for an attempted bank robbery. In a conversation recorded by the agents, the defendant admitted that he was the "trigger man" in the robbery and murder of Ernest Marks. Subsequently, the defendant was arrested and charged with the Marks crimes.

At trial below, the tape containing the defendant's confession was played before the jury. Later, testifying in his own behalf, the defendant repudiated his confession. He stated that, from information he "heard on the street," he had falsified the story of his involvement in the Marks robbery and murder to induce the purported underworld figures to employ him and to "help [him] get out of town."

Out of the presence of the jury, the defendant proffered testimony relating to the third-party confession in dispute here. Karen Hampton testified that in November, 1976, following her arrest on charges unrelated to the Marks robbery and murder, she was asked by the police whether she knew anything concerning the Marks incident.

According to Hampton's testimony, she told the police that on November 1, shortly before her arrest, she had met Joseph Brown and a companion on the street and that the pair had tried to sell her a radio. When she asked Brown "what was happening," he replied that the police were "after him again" because he was "supposed to have splattered some [man] across the street" at Carma's. Brown, Hampton testified, complained that "[w]e didn't get but a lousy hundred dollars and this radio." Brown also told her, Hampton said, that the police had talked to someone named Betty and that he was concerned about "what she was going to do."

Diane Flythe testified that she had observed Hampton conversing with Brown on November 1. Flythe stated, however, that she had not overheard the conversation.

James Backus, an attorney, testified that, based upon Karen Hampton's information, the police had arrested Joseph Brown and charged him with the Marks robbery and murder. Backus, who had been appointed to represent Brown in connection with the

charges, testified further that the general district court had certified Brown to the grand jury; that Brown had been indicted; and that, when the Commonwealth's Attorney learned of the present defendant's confession to the FBI agents, the charges against Brown were nolle prossed. Backus stated also that Brown had denied complicity in the Marks robbery and murder. Finally, Backus, as well as others called by the defense, testified concerning the unavailability of Brown as a witness at the defendant's trial.

■ Holding that the defendant had failed to establish the reliability of Brown's confession and, accordingly, that the testimony relating thereto was barred by the hearsay rule, the trial court refused to permit Karen Hampton to testify before the jury. This refusal, the defendant contends, was error.

The defendant argues that Brown's confession was a declaration against penal interest and that, in Virginia, such a declaration by a dead or otherwise unavailable witness is admissible as an exception to the hearsay rule. Proof of the reliability of Brown's confession was not required, the defendant maintains, and the "bare confession," therefore, should have been submitted to the jurors "for what they might consider it worth."

In *Hines v. Commonwealth*, 136 Va. 728, 117 S.E. 843 (1923), this court, adopting a rule admittedly "out of line with the current of authority," held that evidence of an extra-judicial confession, exculpatory of the accused and made by a dead or otherwise unavailable witness, is admissible as an exception to the hearsay rule. Accordingly, we reversed a murder conviction and ordered a new trial to permit jury consideration of evidence relating to such a confession. Later, in *Newberry v. Commonwealth*, 191 Va. 445, 61 S.E.2d 318 (1950), upon the precedent of *Hines*, we reversed another murder conviction for the trial court's refusal to admit similar evidence.

Although *Hines* and *Newberry* recognize a declaration against penal interest as an exception to the hearsay rule, neither case stands for the proposition, asserted by the defendant here, that a "bare confession" is admissible without supporting proof of its reliability. Indeed, we believe both cases stand for the contrary proposition.

While this court did state in *Hines* that it was "disposed to think that the evidence of even a bare confession by a deceased or unavailable witness ought to go to the jury for what they may consider it worth," this view was not adopted. Instead, because the decision to recognize a declaration against penal interest as an exception to the hearsay rule was contrary to "the current of authority," this court expressly limited the precedential effect of its holding to "the particular facts of the case in hand." 136 Va. at 747, 117 S.E. at 848. Its "new rule" with reference to declarations against penal interest, the court stated, would be applicable to cases "where there is anything substantial other than the bare confession to connect the declarant with the crime." 136 Va. at 748, 117 S.E. at 849.

The "particular facts" of *Hines* showed that only one person had committed the murder there involved and that the third-party declarant had confessed separately to three witnesses that he was the murderer. In one statement, the declarant expressly exonerated the accused by name. In addition, other evidence extrinsic of the confessions connected the declarant with the crime.

Similarly, in *Newberry*, we limited the holding to "the facts and circumstances of [that] case." 191 Va. at 462, 61 S.E.2d at 326. Those facts and circumstances showed that a brother of the accused had confessed in writing that he alone had committed the murder with which the accused was charged. The declarant had also stated to two witnesses that he was the murderer. In addition, other evidence incriminated the declarant.

Thus, we believe it is settled in Virginia that, while a declaration against penal interest is recognized as an exception to the hearsay rule, such a declaration made out of court by a dead or otherwise unavailable witness is admissible only upon a showing that the declaration is reliable. We make no attempt here to delineate the quality or quantity of evidence necessary to establish reliability; the question must be left to the sound discretion of the trial court, to be determined upon the facts and circumstances of each case. But, in any case, once it is established that a third-party confession has been made, the crucial issue is whether the *content* of the confession is trustworthy. And determination of this issue turns upon whether, in the words of *Hines*, the case is one where "there

is anything substantial other than the bare confession to connect the declarant with the crime."

We reject, therefore, the defendant's contention that Brown's "bare confession" should have been submitted to the jury. The defendant argues, however, that, even if he was required to establish the reliability of the confession, he satisfied the requirement.

In this connection, the defendant argues that "it must be remembered that Hampton's testimony had been reliable enough in Brown's case to have the . . . General District Court find probable cause against him for the instant charges and to have him indicted for the charges." The Commonwealth, the defendant says, relied on Hampton's testimony "in each instance" and, furthermore, in general district court, Hampton was under oath and subject to cross-examination. In addition, the defendant asserts, Diane Flythe observed Hampton conversing with Brown at the time Hampton claimed that Brown had confessed.

Although this argument is difficult to understand, we take it to mean that the matters therein recited corroborate the fact that Brown had confessed to Hampton, that Hampton, therefore, was a reliable witness and, accordingly, that the reliability of Brown's confession was thereby established. If this is the defendant's argument, it misses the point. The issue is not whether Brown actually confessed to Hampton or whether she was a reliable witness; we can assume that both these matters were established. The issue is whether the *content* of Brown's confession was reliable, and, in resolving this issue, we search the record for indicia of trustworthiness in the form of evidence from other witnesses that Brown confessed to them, extrinsic evidence connecting him with the Marks crimes, or a satisfactory combination of both. Upon this issue, it is irrelevant that Diane Flythe may have observed Hampton and Brown conversing or that the general district judge and the grand jury may have credited Hampton's story sufficiently to hold Brown for the crimes. These matters, therefore, furnish no indicia of the trustworthiness of Brown's confession.

Even so, the defendant argues, the trustworthiness of Brown's confession was otherwise established by "some of the Common-

wealth's evidence." This evidence, the defendant says, "corroborated facts alleged in Brown's declaration." The defendant asserts that Brown's admission to Hampton that he "splattered" some man at Carma's was corroborated by medical evidence that Marks died of a shotgun blast; that Brown's statement that he obtained only a radio and $100 was confirmed by evidence that a similar radio and a like amount of money were stolen from Marks; and that Brown's concern about what someone named Betty was "going to do" was supported by the fact that, at trial, the Commonwealth called a witness named Betty, who worked at Carma's.

This recitation shows, of course, that Brown had some knowledge of the incident at Carma's. But, as the defendant himself testified in repudiating his own confession, the details of the incident were well known "on the street." The facts contained in Brown's confession, therefore, were not of such a unique nature that they would have been known only by an actual perpetrator of the Marks crimes. Brown, if he desired to fabricate a story to impress Hampton, could have resorted to "street" information as readily as the defendant claimed he had done in falsifying the story of his involvement in the Marks crimes to impress the undercover agents in the hope they would employ him.

Thus, in the final analysis, only the testimony of Karen Hampton supports Brown's purported confession. So far as the record shows, Brown confessed to no other witness, and no extrinsic evidence connects him with the robbery and murder of Marks. This is not a case where, in the words of *Hines*, "there is anything substantial other than the bare confession to connect the declarant with the crime." Because the proffered testimony showed only a "bare confession," the testimony was inadmissible under the hearsay rule.

But, the defendant argues, to apply the hearsay rule so as to refuse him the right to present Karen Hampton's testimony before the jury would be violative of due process of law because the refusal would deny him a fair opportunity to defend against the Commonwealth's charges. This fair opportunity to defend, the defendant maintains, requires that an accused be permitted to introduce at trial "any evidence which is exculpatory in nature."

In this argument, the defendant relies upon *Chambers* v. *Mississippi*, 410 U.S. 284 (1973). There, in a murder prosecution, the trial court, pursuant to a Mississippi rule barring the admission of declarations against penal interest*, had refused to admit evidence of a third-party confession. Stating that "the hearsay rule may not be applied mechanistically to defeat the ends of justice," 410 U.S. at 302, the Court found a denial of due process of law and reversed.

But, in *Chambers*, the Court found that the third-party statements "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." 410 U.S. at 300. The third party had confessed to the murder in writing under oath and also had stated to three witnesses that he had committed the crime. In addition, an eyewitness had seen the third party kill the victim, and another witness had observed the third party with a gun in his hand immediately after the shooting.

At trial, Chambers was denied both the right to cross-examine the third party, who was present in court, and the opportunity to examine the several witnesses whose testimony would have supported the reliability of the third-party confession. The Court concluded that the refusal of the right to cross-examine the third party, *coupled with* the exclusion of the testimony of the other witnesses, had deprived the accused of a fair opportunity to defend against the state's charges. Because of the dual nature of this deprivation, the Court found a denial of due process of law.

In the present case, we do not find a similar combination of circumstances. The defendant does not complain that he has been denied the right to cross-examine the third-party confessor. Neither has the defendant been refused the opportunity to introduce testimony concerning a third-party confession that was supported by "considerable assurance of [its] reliability"; the defendant simply was unable to establish the reliability of Brown's confession. Accordingly, we conclude that the defendant suffered

---

* Citing *Hines, supra*, the Supreme Court noted that Virginia was one of only four states which recognize a declaration against penal interest as an exception to the hearsay rule. 410 U.S. at 299, n. 17.

no denial of due process of law in the trial court's refusal to permit Karen Hampton to testify before the jury.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*

COMPTON, J., *dissenting.*

In my opinion, the majority of the court today emasculates the third-party-confession rule adopted in Virginia in *Hines* v. *Commonwealth*, 136 Va. 728, 117 S.E. 843 (1923), and followed in *Newberry* v. *Commonwealth*, 191 Va. 445, 61 S.E.2d 318 (1950). A new dimension has been added to the former law and, as illustrated in the application of the new rule to the facts of this case, the useful *Hines* doctrine is diluted as an effective tool in the search for truth in a criminal case.

I agree with my brethren that "it is settled in Virginia that, while a declaration against penal interest is recognized as an exception to the hearsay rule, such a declaration made out of court by a dead or otherwise unavailable witness is admissible only upon a showing that the declaration is reliable." I also agree that the trial court should not admit a "bare confession" unless there is something "substantial other than the bare confession to connect the declarant with the crime." But I do not agree with the ingredient today appended to the *Hines* rule, *viz.*, that for the declaration to be admissible the trial court must be satisfied that "the *content* of the confession is trustworthy." In the future, the court says, there must be evidence from more than one witness that the declarant confessed to them, extrinsic evidence connecting the declarant with the crime, "or a satisfactory combination of both." This requirement goes too far. The application of this extra dimension can only result, as it does in this case, in usurpation of the jury's function of determining weight of evidence and credibility of witnesses. The *Hines* court emphasized the importance of such a consideration at least twice. Stating that third party confessions "ought to go to the jury for what they are worth", 136 Va. at 740, 117 S.E. at 846, the court said:

If there be doubt about whether such declarations were actually made, or, if made, were true, such doubts, like any others as to the weight and credibility of testimony, ought to be settled by the jury. It may be true that evidence of extra judicial confessions is susceptible of abuse, but the same thing is equally true as to extra judicial admissions made against pecuniary or proprietary interests, and such admissions are now universally admitted, even when made by third parties to the litigation, if they are material to the issue. If a charge involving the life or liberty of a citizen, and depending solely upon circumstantial evidence, cannot stand the test of allowing the jury to determine from the testimony whether a third party has in fact confessed guilt, and if so whether such confession was true, a conviction ought not to follow.

136 Va. at 740-41, 117 S.E. at 846. The court also noted:

Unfortunately, as all must concede, witnesses sometimes swear falsely, and it cannot be doubted that alleged confessions of crime by third parties may easily be foisted on the courts and juries, but so may alleged admissions in civil cases, as, for example, regarding the location of a corner tree or other real estate controversy. As to both classes of admissions they must be admitted, if at all, because the evidence itself is important to the ends of justice, and because it may be assumed that no man will speak falsely to his own hurt. The truth of the admission itself, and the credibility of the witness who undertakes to repeat the admission, must, like the truthfulness of all other testimony, address itself to and be settled by the jury.

136 Va. at 745, 117 S.E. at 848.

In my view, the disputed evidence in this case should have been admitted because Brown's declaration bore sufficient indicia of reliability and trustworthiness to take it out of the realm of inadmissible hearsay and to bring it within the area of probative evidence to be weighed by the triers of fact. For example, Hampton stated Brown and a companion tried to sell her a radio; a radio was stolen in the robbery. Also, Brown was quoted as saying he was "supposed to have splattered some [man]" at Carma's; the killing was by a shotgun blast. In addition, Hampton said Brown complained "[we] didn't get but a lousy hundred dollars and this radio"; these items were subjects of the theft. Moreover, Brown was said to be concerned about the participation in the prosecution of a "Betty"; a person by that name was employed at Carma's. Furthermore, based on Hampton's testimony, Brown was arrested and charged with the crimes; he was certified by the general district court to the grand jury, upon a finding of probable cause; and he was indicted by the grand jury, upon another finding of probable cause. A declaration buttressed by such circumstances is not a "bare confession" in any sense of that phrase, I submit.

The majority's addition of the requirement that the trustworthiness of the content of the confession must be demonstrated to the satisfaction of the trial judge ignores the rationale which supports the creation of an exception to the hearsay rule for declarations against penal interest. As the *Hines* court recognized,

> Hearsay evidence is excluded . . . because it lacks the sanction of an oath and the test of cross-examination, and facilitates the use of perjured testimony . . . . [O]ne of the exceptions to this rule, universally recognized, is that relevant declarations against interest, where the declarant has since died or otherwise become unavailable as a witness, are receivable in evidence. The basis of this exception to the rule is that the evidence itself is important to the ends of justice, and that the element of self interest affords a reasonably safe substitute for the oath and cross-examination as a guarantee of truth.

136 Va. at 743, 117 S.E. at 847. Thus the mere adoption of the exception recognizes "that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting." 5 J. Wigmore, *Evidence in Trials at Common Law* § 1457 (Chadbourn rev. 1974). Once a bare confession is corroborated by evidence connecting the declarant with the crime, the trustworthiness of the content of the confession is presupposed because it is against interest and the weight of the confession and its credibility are issues for resolution by the jury.

In its effort to justify the conclusion that the *content* of the confession was unreliable, the majority argues that the unique details of the crime were common knowledge "on the street" and thus Brown could have fabricated his statement to Hampton. But that conclusion of untrustworthiness is only one of two permissible inferences to be drawn from these facts. Another equally compelling deduction, disregarded by the majority, is that Brown's confession was true, especially since it furnished the basis for findings of probable cause in two separate judicial proceedings, at one of which the witness Hampton was subject to cross-examination. I would allow the jury to choose between the inferences; the majority has now authorized the trial judge to make the selection.

In my opinion, the unnecessary narrowing of the *Hines* rule has resulted in a transfer to the trial court of the jury's perogative to weigh the evidence and decide the credibility of witnesses in the area of third-party confessions.

For these reasons, I think the trial court erred in refusing to receive Hampton's testimony in evidence. I would therefore reverse the convictions.

POFF, J., joins in this dissent.