**Alexandria**

RAMON HERNANDEZ

v.

COMMONWEALTH OF VIRGINIA

No. 1833-91-4

Decided January 26, 1993

COUNSEL

Sean D. O'Malie, for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Ramon Hernandez (appellant) appeals from a judgment of the Circuit Court of Arlington County (trial court) that approved a jury verdict convicting him for malicious wounding of James Poole (the victim). Appellant asserts that, because his conviction was contrary to the law and evidence, it should be reversed and he should be dismissed from further prosecution. In the alternative, he argues that the conviction should be set aside and a new trial ordered because the trial court erroneously refused to admit the testimony of Anna Julio Osorio (Anna) who would have told the jury that Jose Osorio (Jose) had confessed to her that he had struck the victim and that appellant had not in any way participated in the assault. Appellant further asserts that a new trial should be ordered because the trial court permitted the prosecution to argue matters that were not in evidence and to speculate that appellant may also have been engaged in a criminal activity totally unrelated to the crime for which he was being tried. Upon familiar principles, we state the facts in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.

On February 2, 1991, at approximately 3:45 a.m., the victim parked his car in the parking lot of his apartment complex in Arlington County, at which time he observed two men. One man was moving around the lot, and the other was sitting in a car parked on the lot. He observed that both men were of Hispanic origin, that the man in the car was wearing a light blue sweatshirt, and that the man walking about was wearing a leather coat and jeans. The victim nodded his head toward the man wearing the leather coat. As the victim walked toward his apartment, he heard two men saying, "hey, hey." He turned around and saw the same two men walking briskly toward him. The victim glanced at the men and noticed that they had "sort of shiny like objects in their hands." As he ran from the two men, he dropped his jacket in the middle of the street and fell down. After he had fallen, the two men got on top of him and a struggle ensued. As one man hit the victim on his leg, the other man hit him on his chin with an object that caused severe bleeding. The two assailants then left.

The victim crossed the street to a market, where he received medical assistance for his chin which was bleeding badly. He saw a police officer and flagged him down to report the incident. The police officer and the victim returned to the scene to look for the victim's coat. The victim saw his assailants walking back from an apartment building. Officer Hanula chased the men and caught appellant. The victim estimated that between six and seven minutes elapsed from the time he first saw the two men until the time he flagged down Hanula. At trial, the victim identified appellant as one of the two men who attacked him but was unable to say which of them struck his chin.

Officer Hanula testified that the clothing description the victim gave him matched those worn by the two men whom he chased. When Hanula apprehended appellant, he found a kitchen-type knife that appellant had dropped from his right hand and a small screwdriver in appellant's right front pants pocket.

The defense sought to have Anna testify that her cousin, Jose, who was not in court, had told her that he committed the assault. The trial court sustained the prosecutor's objection. The jury was removed from the courtroom to permit appellant to proffer the witness's expected testimony. The witness could not speak English and spoke through an interpreter. Relative to the proffer, the transcript discloses the following exchange:

MR. O'MALIE [defense counsel]: Your Honor, I could make a proffer myself to the Court and simply ask a question with the understanding that that would be the evidence we would like to present for the jury, if the Court would rather hear directly from the witness as opposed to my proffer?

THE COURT: The witness is here. The proffer rule is over.

MR. O'MALIE: Well, let me ask — ma'am, what, if anything, did Mr. Osorio tell you about the facts of this case?

THE COURT: This is under the continuing objection of the Commonwealth, only done for the purpose of putting it on the record.

MR. O'MALIE: Yes, sir.

THE WITNESS: You mean if he spoke to me about this case?

MR. O'MALIE: About anything that he might have done.

THE WITNESS: He said the black man had hit them and they had run away.

MR. O'MALIE: Are you certain about the translation?

THE INTERPRETER: Can I ascertain — the way she worded it, Your Honor, the first time, it sounded to me as though a black man had hit them and they had run away. I just want to clarify from her if — who hit who, so in my mind, I have the correct translation.

The way she worded it, was — the translation is that Mr. Osorio had hit some black man.

BY MR. O'MALIE:

Q. Did he tell you whether or not that he had run from the scene?

A. Yes, he had run away.

Q. Did he tell you whether or not Ramon Hernandez had done anything?

A. He said he hadn't done anything.

MR. O'MALIE: Your Honor, that would be our evidence. And we would argue that that would be an exception to the hearsay rule in a declaration against interest. Certainly, that witness made declarations against his penal interests and therein would be the guarantee of trustworthiness. Also, not to mention, she's also related to this witness. This witness has testified —

THE COURT: Hearsay or hearsay, is the rule.

No further evidence on the subject was offered. Jose was not called as a witness. Counsel for appellant represented the following to the trial court:

We have been unable to locate him. He has absconded. We haven't been able to locate him. We believe that we might be able to.

But as I understand from investigating the case is, speaking with witnesses, he is hiding out. He knows that the police may be looking for him.

No request for a continuance prior to trial had been made and no further evidence was proffered.

Appellant did not speak English and testified through an interpreter. He said the knife he had with him had been brought with him from his job as a salad maker in a restaurant, and he had found the screwdriver. He denied that he participated in the assault but did see two men beating the victim. He knew one, Jose, but did not know the other man's name. He saw Jose hit the victim.

Before the start of the trial, appellant made a motion *in limine* to bar the introduction of any evidence that would show that appellant was under investigation for possession of burglary tools and grand larceny of the car in which he was seated when the victim first saw him. The prosecutor told the trial court that she did not "intend to offer any evidence of what happened to the car or whether or not the defendant was subsequently investigated for — in connection with auto larceny or tampering."

During closing argument, the prosecutor suggested that appellant may have been tampering with the car in which he had been observed. Appellant objected and moved for a mistrial. The motion was denied. The Commonwealth then further argued: "I suggest to you that that's

what this evidence shows, that they were involved in something." After the prosecutor concluded her closing argument, the court, *sua sponte*, gave a cautionary instruction.

## I. SUFFICIENCY OF THE EVIDENCE

Appellant's motion to strike when the Commonwealth rested its case, his renewal of that motion at the conclusion of all the evidence, and his motion to set aside the jury's verdict were denied by the trial court. Appellant argues that these motions should have been granted because the evidence was insufficient as a matter of law to sustain the conviction. The failure of the evidence to support a malicious wounding conviction, he contends, is founded in the lack of evidence to prove malice and intent to permanently disable, maim or kill the victim. We disagree and find that the evidence proved both the necessary malice and intent.

■ The element in malicious wounding that distinguishes it from unlawful wounding is "malice, expressed or implied, and malice, in its legal acceptation, means any wrongful act done wilfully or purposefully." *Williamson v. Commonwealth*, 180 Va. 277, 280, 23 S.E.2d 240, 241 (1942).

■ In *Christian v. Commonwealth*, 221 Va. 1078, 277 S.E.2d 205 (1981), our Supreme Court reaffirmed a long-standing principle regarding the proof of malice required by the malicious wounding statute. The Court stated:

Considering the *mens rea* contemplated by the mayhem statute, we have said:

"Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury."

*Id.* at 1081, 277 S.E. 2d at 207 (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). Quoting the comment in *Roark v. Commonwealth*, 182 Va. 244, 250, 28 S.E.2d 693, 695-96 (1944), that an unarmed assault "may be attended with such circumstances of violence and brutality that an intent to kill will be presumed," we found the inference arising from the grievous nature of the injuries inflicted sufficient to prove Dawkins's criminal intent.

*Id.* at 1081, 277 S.E.2d at 207. In *Long v. Commonwealth*, 8 Va. App. 194, 379 S.E.2d 473 (1989), we held that intent is the purpose formed in a person's mind that may, and often must, be inferred from the facts and circumstances in a particular case, and may be shown by a person's conduct. *See Ridley v. Commonwealth*, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979); *Hargrove v. Commonwealth*, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974).

The evidence here shows that the victim fell to the ground while running from appellant and another person. After the victim fell, two men began hitting him, inflicting wounds on his leg and cutting his chin, causing severe bleeding. The attack was vicious and totally unprovoked. The victim made an in-court identification of appellant as one who inflicted the wounds in concert with another. That identification was supported in part by a police officer who testified that when arrested, appellant was wearing clothes that matched the description given to the police by the victim only a few minutes after the attack and before appellant was apprehended.

Upon the evidence, either assailant was guilty of any injury to the victim that was inflicted by the other. In accord with the authorities cited and the evidence contained in this record, we find that both malice and intent have been sufficiently proved to support the jury's verdict that appellant was a responsible criminal agent and guilty of maliciously wounding the victim.

## II. HEARSAY EVIDENCE

Appellant argues that an exception to the hearsay rule established in *Hines v. Commonwealth*, 136 Va. 728, 117 S.E. 843 (1923), permits a witness to testify that a person not on trial, and unavailable, confessed to the witness that he or she committed the crime. Historically, only admissions against pecuniary interest have been held to be exceptions to the hearsay rule; however, in *Hines*, finding that relevancy and the guarantee of truth under the facts of that case were as great as in civil cases, our Supreme Court applied the exception. In doing so, recognizing that its decision was contrary to the majority of authorities, the Court expressly limited the application of the exception and effect of that decision to the particular facts of that case. *Id.* at 747, 117 S.E. at 849.

In construing the *Hines* case, the Virginia Supreme Court has specifically held that the exception does not apply to evidence that shows

only a "bare confession" without additional or supporting proof of reliability. *Ellison v. Commonwealth*, 219 Va. 404, 407, 247 S.E.2d 685, 687 (1978). If unavailability has been proved, the crucial issue is whether the content of the confession is reliable or trustworthy. *Id.* at 409, 247 S.E.2d at 688. In resolving that issue, the record must be reviewed for evidence from other witnesses to whom the confession has been made or extrinsic evidence linking the confessor to the crime, or a combination of both. *Id.* An appellate court should make no attempt to delineate the quality or quantity of the evidence necessary to establish reliability; that question must be left to the sound discretion of the trial court, to be determined upon the facts and circumstances of each case. *Id. See also Burton v. Oldfield*, 195 Va. 544, 550, 79 S.E.2d 660, 664-65 (1954).

The record fails to disclose proof that Jose was unavailable. In fact, counsel for appellant candidly told the trial court: "We believe that we can find him," and no request for a continuance or assistance from the police was sought.[1] Moreover, the bare confession was the only proof proffered as to the reliability of Jose's alleged confession. We have reviewed the record and find no abuse of the trial court's discretion in its refusal to admit the proffered testimony relating to the confession.

## III. THE CLOSING ARGUMENT

Before trial, appellant moved the trial court to direct the prosecutor not to introduce any evidence that appellant was under investigation for grand larceny of an automobile and for possession of burglary tools. Both counsel conceded that the victim would testify that he saw appellant sitting in a car when the victim arrived at the parking lot. The prosecutor agreed that the Commonwealth would present no evidence of what happened to that car or whether appellant was subsequently investigated for auto larceny or tampering. No such evidence was presented. The prosecutor further responded to appellant's motion by saying that the Commonwealth did "intend to rely on [appellant's] presence in that car," and that, in argument, she intended "to draw a reasonable inference from the facts that will be in evidence." She added:

---

[1] *See Wise Terminal Co. v. McCormick*, 107 Va. 376, 58 S.E. 584 (1907) (which requires reasonable diligence to find the declarant).

I'm not going to say that he was subsequently investigated for the breaking and entering and that the car was indeed broken into, but I think I shouldn't have to be precluded from saying to the jury he was seen in a car with another guy circling.

I think I could be able to argue that there was something going on there, that the defendant was the person in the car, his conspirator was the lookout, this other incident occurred and that would be motive for the attack if that's what I need to do.

The trial court reserved ruling on the motion, advising appellant that he could "raise this motion *in limine* at that time."

The victim, as expected, testified that when he first saw appellant, he was sitting in a car parked on the lot where the assault occurred, and that the other assailant at the time was "moving around the parking lot." Appellant testified on his own behalf and denied that he assaulted the victim, but admitted that he stood by and watched Jose commit the assault. The prosecutor's cross-examination obviously was designed to cast doubt on appellant's credibility. She elicited more details from appellant of his actions immediately preceding the assault. In response to the prosecutor's questions, appellant described those events as follows.[2]

Appellant said that he worked in an Olde Towne Alexandria restaurant and that Jose had agreed to meet him at 12:30 a.m. at the restaurant in order to drive appellant to his sister's apartment located several miles from Olde Towne. When Jose arrived, he did not have a car and the two men walked together to appellant's sister's apartment, arriving there at 2:15 a.m. Jose remained "in the cold" outside "in the street" for one and one-half hours[3] while appellant remained inside talking to his sister. Appellant said that at 3:45 a.m., he left his sister's apartment, joined Jose, who was waiting outside in the street, and started walking toward appellant's apartment. A third man whom appellant did not know came up and talked in Spanish with Jose. Appellant "hardly understood them." Appellant then testified that, as the three of them stood there, the victim arrived, did nothing to provoke them, yet Jose and the unidentified third person "just went after him." Appellant said he was afraid that Jose would beat him so he just stood by without intervening or leaving. The assailants ran away and then came

---

[2] We do not state these as factual but only to show the evidence the Commonwealth relies on to justify the prosecutor's argument.

[3] The assault occurred at approximately 4:00 a.m. on February 2, 1991.

back. When the police came, all three ran away again. Appellant said that he always carried the knife; that he had found the screwdriver that morning on the sidewalk near the Alexandria restaurant where he worked; and that on February 2, 1991, Jose lived near appellant's apartment but that he has since moved. Appellant further denied that he had been in the car. He stated that it was the third unknown man who was seated in the car, and that while there Jose talked to him.

During the prosecutor's final argument to the jury, she rhetorically asked: "[w]hat they were doing inside the car, what the defendant was doing, he was probably tampering of some sort, doing something that didn't. . . ." Appellant objected and moved for a mistrial. The trial court overruled his motion, saying, "the jury is not bound by closing argument of counsel." No precautionary instruction was requested. The prosecutor continued her argument by saying:

> The evidence, ladies and gentlemen, that you heard from Mr. Poole is that when he first saw the defendant, he saw the defendant inside of a car. He didn't say he really wasn't the defendant. He said it was that man that he saw.

> And we know from the defendant that he didn't have a car that night and neither did his friends. Yet, he was in someone else's car. And this friend, who Mr. Poole described as milling about the outside of that car, was his lookout. I suggest to you that that's what this evidence shows, that they were involved in something.

> When Mr. Poole walked by them and they had eye contact, when Mr. Poole looked at that other individual and he said to us, they acknowledged each other's presence, they got scared because what would Mr. Poole do? He might go call the police. So that's when they ran after him.

> They ran after him so that they could prevent him from calling the police, which is what he ultimately did, not because he saw them in the car. He didn't think much about that, but because then they attacked him.

> The defendant was found within about ten minutes of this attack, not only with the screwdriver in his pocket, but the serrated knife that you see. And it's in evidence and you can look at it in the jury room.

 It has long been held that the attorneys for the Commonwealth are under the duty not only to prosecute one charged with crime, but also to see that the accused receives a fair and impartial trial. "Nothing should be done or permitted to prejudice the case of an accused, or obscure the minds of the jurors on the question of whether or not he is guilty of the offense charged." *McLane v. Commonwealth*, 202 Va. 197, 205, 116 S.E.2d 274, 281 (1960). "[F]acts which cannot be proved, because irrelevant, afford no proper basis for argument." *Grubb v. Commonwealth*, 189 Va. 954, 962, 54 S.E.2d 881, 885 (1949). However, some arguments made that are not based on the actual evidence have been held not to constitute reversible error. *See, e.g., Montgomery v. Commonwealth*, 214 Va. 343, 346, 200 S.E.2d 577, 579 (1973). Moreover, the prosecutor is always entitled to quote evidence of record in support of an inference the jury is urged to adopt. "Whether the inference is justified by the predicate is a question for the jury." *Wise v. Commonwealth*, 230 Va. 322, 333, 337 S.E.2d 715, 722 (1985), *cert. denied*, 475 U.S. 1112 (1986). It is only under exceptional circumstances that an appellate court will set aside a judgment because counsel, in arguing to the jury, attempted to draw an extreme or unjustified conclusion from the evidence. *Showalter v. United States*, 260 F. 719, 721 (4th Cir. 1918), *cert. denied*, 250 U.S. 672 (1919). *See also* 5B Mich-ie's Jurisprudence, *Criminal Procedure* § 48, at 298 (1990). We find no such exceptional circumstances here.

It is clear that in summarizing the evidence, the prosecutor wanted the jury to disbelieve appellant's version of the events that occurred that morning. It was fair to argue that a totally unprovoked malicious attack on a person at 4:00 a.m. on a cold February morning must have had an underlying motive. Even if the argument were to be considered improper or irrelevant, it was cured by the trial court's cautionary instruction[4] advising the jury that appellant was being tried only for robbery (for which appellant was acquitted) and malicious wounding. *See Braxton v. Commonwealth*, 195 Va. 275, 278, 77 S.E.2d 840, 843 (1953).

Sometimes it is difficult to draw the line between proper and improper comments, hence the general rule is to leave such distinction largely to the discretion of the trial court, whose ruling will be allowed to stand unless it is made to appear probable that

---

[4] While inartfully stated, the instruction told the jury that matters relating to the automobile were not before the court and no request was made for further clarification.

the party complaining has been substantially prejudiced by the objectionable remarks or argument.

*Williams v. Commonwealth*, 188 Va. 583, 598, 50 S.E.2d 407, 414 (1948). The court's exercise of that discretion will not be interfered with unless abused. *Braxton*, 195 Va. at 278, 279, 77 S.E.2d at 842.

Appellant's account of his actions preceding and during the time of the assault was subject to a credibility argument. We do not find the prosecutor's argument to be prejudicially unfair to appellant. Further, under the facts and circumstances shown by this record, we find no abuse of trial court discretion in the denial of the motion for mistrial.

Accordingly, for the reasons stated the judgments of the trial court are affirmed.

*Affirmed.*

Coleman, J., and Fitzpatrick, J., concurred.