COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


LOUIS W. RAIA, S/K/A
 LOUIS WILLIAM RAIA
                                          OPINION BY
v.        Record No. 1950-95-4    JUDGE JERE M. H. WILLIS, JR.
                                       NOVEMBER 26, 1996
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                 Robert W. Wooldridge, Jr., Judge

           Paul A. Scott (Madigan & Scott, Inc., on
           brief), for appellant.

           Leah A. Darron, Assistant Attorney General
           (James S. Gilmore, III, Attorney General, on
           brief), for appellee.


        On appeal from his convictions for second degree murder and
use of a firearm in the commission of murder, Louis W. Raia
contends that the trial court violated his rights under the
Confrontation Clause of the Sixth Amendment to the United States
Constitution by permitting a police investigator to read to the
jury a transcript of a third party's statement.  We disagree and
affirm the judgment of the trial court.

        On appeal, we view the evidence in the light most favorable
to the Commonwealth, granting to it all reasonable inferences
fairly deducible therefrom.  Higginbotham v. Commonwealth, 216
Va. 349, 352, 218 S.E.2d 534, 537 (1975).

        On November 17, 1994, Raia fatally shot John H. Baumgardner
in the parking lot in front of Bennigan's restaurant at Fair Oaks
Mall in Fairfax County.  After leaving the parking lot with

Sheron Montrey, Raia telephoned the police and reported falsely that his car had been stolen. Suspecting their involvement in the shooting, the police transported Raia and Montrey to a police station.

After being told by the police that a witness had identified him as the shooter, Raia waived his Miranda rights and gave a statement. He said that Montrey told him that an individual named "Tony" had assaulted, molested and stalked her for two years, and that she was meeting "Tony" at Bennigan's restaurant later that day. Raia, who admitted a romantic involvement with Montrey, agreed to wait for her in the parking lot to ensure her safety. When Montrey exited the restaurant with Baumgardner, Raia removed his gun from his car. He approached Montrey and Baumgardner, feigned a chance encounter, introduced himself to Baumgardner, then suggested that they all return to Bennigan's. When Baumgardner rejected this suggestion and began to walk off with Montrey, Raia shot him. Raia testified that he thought Baumgardner was armed and was attempting to abduct Montrey.

At trial, the Commonwealth called Montrey as a witness. Asserting her Fifth Amendment rights, she refused to answer any questions concerning the shooting. Over objection by the defense, the trial court permitted a police investigator to read to the jury a statement given by Montrey to the police. In her statement, Montrey said that she had been seeing Baumgardner for about two years, during which time he had abused her. She said

- 2 -

that she had discussed with Raia her troubles with Baumgardner and that she and Raia had planned to remove Baumgardner from her life. She said that she and Raia had gone to Bennigan's on previous occasions looking for Baumgardner but had not encountered him until the night of the shooting. She said that it was more her idea than Raia's, but that they had planned to lure Baumgardner to the parking area of the mall where Raia would do whatever was necessary, including shooting Baumgardner, to relieve her of further encounters and difficulties with Baumgardner. She said that Raia had put the gun in his car earlier so that he would have it when he confronted Baumgardner. She said that Raia shot Baumgardner in the back.

Raia contends that the admission of Montrey's statement into evidence against him violated his Sixth Amendment right of confrontation. He cites Lee v. Illinois, 476 U.S. 530 (1986), which held that because of its inherent unreliability, the admission of a co-defendant's confession into evidence violated the Confrontation Clause. Id. at 545. See also Bruton v. United States, 391 U.S. 123 (1968). However, the confession of a co-defendant, if clothed with sufficient "indicia of reliability," is admissible. Lee, 476 U.S. at 543. See also Ohio v. Roberts, 448 U.S. 56, 66 (1980).

Bruton and Lee involved joint trials and concerned statements that depended for their admissibility upon their characters as confessions of defendants on trial. Noting the

natural incentive of an accused to exonerate himself by blaming another, the Supreme Court recognized the inherent unreliability of such statements as evidence against co-defendants of the declarant.  This case does not involve a scenario comparable to those in Bruton and Lee.  Raia and Montrey were not jointly on trial.  The Commonwealth did not proffer Montrey's statement as the confession of a defendant.  Because she was not on trial, her statement did not depend for admissibility on its character as her confession.  Rather, her statement was offered against Raia as a declaration against interest made by an unavailable witness.

A third party's statement is admissible as an exception to the hearsay rule if:  (1) the declarant is unavailable, (2) the statement was against the declarant's interest at the time it was made, and (3) the declarant was aware at the time the statement was made that it was against his interests to make it.  Boney v. Commonwealth, 16 Va. App. 638, 643, 432 S.E.2d 7, 10 (1993) (citations omitted).  Furthermore, the declaration must be shown to be reliable.  Ellison v. Commonwealth, 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978).  The determination of whether a statement against penal interest is reliable lies within "the sound discretion of the trial court, to be determined upon the facts and circumstances of each case."  Id. at 408, 247 S.E.2d at 688.

When Montrey invoked her rights under the Fifth Amendment and refused to testify, she became unavailable as a witness.

- 4 -

Boney, 16 Va. App. at 643, 432 S.E.2d at 10. Her statement was plainly against her penal interests at the time it was made. It implicated her in planning an assault on Baumgardner, threatening him with a deadly weapon, killing him if necessary, and participating in carrying out that scheme. The transcript of her statement discloses rational responses to questions and renders inescapable the inference that she must have realized the seriousness of her self-implication. Therefore, if Montrey's statement was otherwise reliable, it was admissible as a statement against her penal interests.

Montrey's statement contained sufficient indicia of reliability to establish its admissibility. First, both Raia and Montrey confessed voluntarily. Second, Raia's statement and testimony corroborate Montrey's statement in significant respects. Raia's and Montrey's statements are consistent in their descriptions of the events leading up to, and including, the shooting, of Raia's and Montrey's participation in those events, and of their attempted "cover-up" immediately following the shooting. Third, Montrey's statement is also consistent with the physical evidence. Fourth, Montrey's statement was less favorable to her penal interests than was Raia's. Fifth, Investigator Headley's description of the circumstances of Montrey's statement and her demeanor while giving it supports the finding that her statement was reliable. See United States v. Eury, 792 F.2d 441, 444 (4th Cir. 1986), cert. denied, 479 U.S.

1037 (1987).

Raia argues, however, that while the two statements overlap in their factual recitations to a great extent, they diverge with respect to any planning of the murder, and that such divergence is not insignificant.  Therefore, Raia argues the reliability of Montrey's statement was not established.  This argument addresses a factual determination by the trial court.  See Ellison, 219 Va. at 408.  Because this determination is supported by credible evidence, we will not disturb it on appeal.

As the Supreme Court has noted, "[t]he fact that a statement is self-inculpatory does make it more reliable . . . ." Williamson v. United States, 114 S. Ct. 2431, 2435 (1994). Because the record discloses sufficient indicia of reliability to support the trustworthiness of Montrey's statement, the trial court did not abuse its discretion in admitting that statement as an exception to the hearsay rule.  See Chandler v. Commonwealth, 249 Va. 270, 279, 455 S.E.2d 219, 224-25 (1995).

> [W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.

>     \*    \*    \*    \*    \*    \*    \*

> To exclude such probative statements under the strictures of the Confrontation Clause would be the height of wrongheadedness, given that the Confrontation Clause has as a basic purpose the promotion of the "'integrity of the factfinding process.'" . . . [A] statement that qualifies for admission under a "firmly rooted" hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability.

White v. Illinois, 502 U.S. 346, 356-57 (1992) (citations omitted).  Admissibility into evidence of the statement against interests of an unavailable witness is a "firmly rooted" exception to the hearsay rule in Virginia.  Thus, the trial court did not err in admitting Montrey's statement into evidence.

The judgment of the trial court is affirmed.

Affirmed.