COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Bray and Senior Judge Overton
Argued at Norfolk, Virginia


JEREMY SHAWN WALTON

v.   Record No. 2471-97-1

COMMONWEALTH OF VIRGINIA                MEMORANDUM OPINION[*] BY
                                        JUDGE RICHARD S. BRAY
ROBERT SABB                                 MARCH 30, 1999

v.   Record No. 2472-97-1

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                      Wilford Taylor, Jr., Judge

          Charles E. Haden for appellants.

          Leah A. Darron, Assistant Attorney General
          (Mark L. Earley, Attorney General, on
          briefs), for appellees.


     Jeremy Shawn Walton and Robert Sabb (appellants) were

convicted in a joint trial for robbery.  On appeal, each

contends that the court erroneously allowed a Commonwealth

witness to invoke the Fifth Amendment, found that he was,

therefore, "unavailable" to testify, and admitted his

extrajudicial statement to police into evidence.  Appellants

also complain that the court erred in denying a continuance to

permit them to produce a witness that failed to appear at trial

---

     [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

and refusing to allow a defense witness to testify.  Finding no error, we affirm the convictions.

                                        I.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to disposition of the appeal.  "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

On June 10, 1997, Jimmy Baggett, a white male, robbed a branch of the First Union Bank.  Tara Ramirez, a teller, testified that Baggett entered the bank, "came up to one of the desks and was writing."[1]  He then approached another teller, who, "for some reason," asked Baggett for identification.  Baggett then "went back outside" briefly, returned, entered Ramirez's line and presented a note demanding $350.  The note also threatened Ramirez that Baggett "was pointing a gun at [her]," and she noticed he was "holding [something] underneath his shirt."  Ramirez gave Baggett the money and watched him exit the

_____

[1]Ramirez recognized Baggett as "the same person that [had reportedly] robbed the bank next door . . ., the afternoon before."

bank and enter "a gray, big car," parked nearby and occupied by "four or five black males."

Officer Jimmy Forbes was alerted to the robbery and soon located the car described by Ramirez, stopping it at a service station. Police arrested and questioned the occupants, four black males, including appellants, and a black female. All denied involvement in the offense. Baggett was arrested a short distance away, waived his Miranda rights, and provided the disputed statement to Forbes. In searches incidental to the arrests, police recovered $50 and $157 in cash from appellants Walton and Sabb, respectively, a screwdriver from the vehicle, and a "practice [robbery] note" from Baggett's sock.

At trial, Baggett was called as a Commonwealth witness and, during initial questioning, acknowledged an acquaintance with appellants "[t]hrough drug dealing." However, when the prosecutor asked if Baggett was with appellants on the day of the robbery, he invoked the Fifth Amendment and refused to answer questions related to the offense. After Baggett responded similarly to cross-examination, the court declared him an unavailable witness. The Commonwealth then recalled Officer Forbes and, over appellants' objections, he repeated Baggett's earlier statement which implicated appellants in a scheme to coerce Baggett to rob the bank and pay a drug debt to appellant Walton.

II.

"It is generally recognized that . . . '[d]eclarations against [penal] interest are admissible as an exception to the hearsay rule because it is felt that a person will not usually make statements damaging to his own interests unless such statements are true.'"  Randolph v. Commonwealth, 24 Va. App. 345, 355-56, 482 S.E.2d 101, 106 (1997) (citation omitted). Accordingly,

> [a] third party's statement is admissible as an exception to the hearsay rule if:  (1) the declarant is unavailable, (2) the statement was against the declarant's interest at the time it was made, and (3) the declarant was aware at the time the statement was made that it was against his interests to make it.  Furthermore, the declaration [by the unavailable witness] must be shown to be reliable.[2]

Raia v. Commonwealth, 23 Va. App. 546, 550, 478 S.E.2d 328, 330 (1996) (citations omitted).  "'[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the [Sixth Amendment] confrontation clause is satisfied.'"  Id. at 551, 478 S.E.2d at 330 (citation omitted).

Thus, "'"once it has been established that a third-party confession has been made, the crucial issue is whether the

---

[2]Appellants challenge only the court's findings that Baggett was entitled to assert his Fifth Amendment privilege, rendering him unavailable, and that his statement was reliable.

content of the confession is trustworthy."'" Randolph, 24 Va. App. at 356, 482 S.E.2d at 106 (citations omitted). The "'"determination of this issue turns upon whether . . . the case is one where 'there is anything substantial other than the bare confession to connect the declarant with the crime'"'" and rests with the sound discretion of the trial court. Id.

Here, Baggett's statement implicated him in a bank robbery and, therefore, was against his penal interest, irrespective of the sufficiency of the statement to convict him of the offense. See Chandler v. Commonwealth, 249 Va. 270, 279, 455 S.E.2d 219, 224, cert. denied, 516 U.S. 889 (1995). Moreover, Baggett admitted involvement in unlawful drug trafficking, also clearly contrary to his penal interest. See 2 Charles E. Friend, The Law of Evidence in Virginia § 18-12 (4th ed. 1996). Additionally, Baggett was identified as the robber and fled in an automobile occupied by appellants and stopped by police near the scene shortly after the offense. The screwdriver used in the offense was found in the car, appellants admitted Baggett's indebtedness to Walton for drug purchases, and cash was recovered from appellants, all consistent with Baggett's statement to police.

Such evidence, together with other circumstances, provided "sufficient indicia of reliability to support the

trustworthiness of [Baggett's] statement." Raia, 23 Va. App. at

551, 478 S.E.2d at 331 (citation omitted).

III.

Appellants next complain that the trial court erroneously

allowed Baggett to invoke the Fifth Amendment, despite Code

§§ 19.2-270 and 18.2-262 which clothe such testimony with

immunity.[3]  However, Code § 19.2-270, "by its terms, confers only

use immunity . . . .  Such limited protection is obviously not

co-extensive with the constitutional privilege and cannot

overcome it, once validly asserted." Gosling v. Commonwealth,

14 Va. App. 158, 164-65, 415 S.E.2d 870, 873 (1992).  Therefore,

the statute "[does] not supplant [a] witness's constitutional

privilege to invoke the protection of the Fifth Amendment."

Boney v. Commonwealth, 16 Va. App. 638, 642, 432 S.E.2d 7, 10

(1993).

Code § 18.2-262 provides, in pertinent part:

> No person shall be excused from testifying
> . . . for the Commonwealth as to any offense
> alleged to have been committed by another
> under this article or under the Drug Control
> Act (§ 54.1-3400 et seq.) by reason of his
> testimony or other evidence tending to
> incriminate himself . . . .

---

[3]Appellants also contend that "[t]he trial court erred in overruling [their] objection to Baggett's invocation of the Fifth Amendment where Baggett had already begun to testify substantively against [them]," a question previously raised on petition and denied by this Court.

–

The referenced "article" relates to crimes involving illegal drugs, not robbery, the instant offense. Thus, the statute was inapplicable to Baggett's testimony.

IV.

Appellants next argue that the trial court erroneously denied their mid-trial motion for a continuance to secure the presence of witness Andre Wiggins. In support of the motion, appellants' counsel proffered that Wiggins' attorney had assured him "that he's willing to have [him] testify and corroborate the testimony of [appellants]" and "feels that he can probably have him here tomorrow if the Court is willing to set it over to tomorrow." In denying appellants' motion, the trial judge concluded that Wiggins was not "a material witness," and the court was not satisfied that he "would . . . likely be present on another date," noting also that "[w]e're at the end of trial."

The record discloses that appellants' attorney had caused a subpoena to be issued for Wiggins "at the jail" on August 8, 1997. On August 13, 1997, the subpoena was returned, bearing a notation which advised that Wiggins was "not found . . .," having been "bonded [on] 08-01-97," and provided his "home address [then] on file." Nevertheless, appellants did not

resubpoena Wiggins or request a continuance of trial, then scheduled for August 26, 1997.[4]

"'The decision whether to grant a continuance is a matter within the sound discretion of the trial court. Abuse of discretion and prejudice to the complaining party are essential to reversal.'" Lowery v. Commonwealth, 9 Va. App. 304, 307, 387 S.E.2d 508, 509 (1990) (citations omitted).

"In determining whether the trial court properly exercised its discretionary powers, we look to the diligence exercised by the moving party to locate the witness and secure his attendance at trial," always "'with due regard to the constitutional guaranty of a fair and impartial trial to one accused of crime, and the right to call for evidence in his favor.'" Cherricks v. Commonwealth, 11 Va. App. 96, 99-100, 396 S.E.2d 397, 399 (1990) (citations omitted). "[C]ontinuances in the midst of trial should not be an everyday occurrence." Bennett v. Commonwealth, 236 Va. 448, 461, 374 S.E.2d 303, 311-12 (1988), cert. denied, 490 U.S. 1028 (1989).

Appellants' proffer suggested that Wiggins' testimony would only have been cumulative of appellants' testimonies denying

---

[4]During the colloquy with the court at arraignment, appellant Sabb advised the court that his witnesses were present. However, appellant Walton answered, "No," to a like inquiry, although he raised no objection to the commencement of trial.

-

knowledge of the robbery by other occupants of the car.
Appellants' attorney was unable to assure the court of Wiggins'
appearance or the availability of his testimony. Moreover, no
effort had been made to resubpoena Wiggins, or to previously
seek a continuance, despite the return of service, nearly two
weeks before trial, advising that he was "not found . . .," and
including his "home address." Such circumstances clearly fail
to establish that the court abused its discretion in denying the
continuance motion.

V.

Lastly, appellants complain that the trial judge erred in
refusing to permit witness Calvin Williams to impeach Baggett's
statement that appellant Sabb had accompanied him on another
bank robbery the day preceding the subject offense. Through
Williams' testimony, appellants sought to establish that Sabb
was with Williams at the time of the earlier robbery, contrary
to Baggett's claim.

Assuming, without deciding, that Williams' testimony was
proper impeachment of Baggett's statement to police, the
disputed ruling was clearly harmless. In <u>Delaware v. Van
Arsdall</u>, 475 U.S. 673 (1986), the United States Supreme Court
instructed that "the constitutionally improper denial of a
defendant's opportunity to impeach a witness . . ., like other
Confrontation Clause errors, is subject to . . . harmless-error

analysis." Id. at 684; see Williams v. Commonwealth, 4 Va. App. 53, 78, 354 S.E.2d 79, 93 (1987). A non-constitutional error is harmless if "'it plainly appears from the record and the evidence given at the trial that' the error did not affect the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Id. "The crux of the harmless error analysis is whether the defendant received a fair trial on the merits and substantial justice has been achieved." Timmons v. Commonwealth, 15 Va. App. 196, 199, 421 S.E.2d 894, 896 (1992).

Baggett's credibility was sufficiently impeached at trial in the absence of Williams' testimony. Baggett was an admitted crack cocaine addict, under the influence of the drug during the robbery, his second like offense in as many days. Shane Ellenson, a cellmate with Baggett, testified that Baggett "said ain't nobody know what was going on" when he robbed the bank and vowed to falsely incriminate others. Further impeachment with respect to the details of an unrelated robbery clearly would have not changed the result and any related error did not compromise appellants' rights to a fair and just trial.

Accordingly, we affirm the convictions.

Affirmed.

Benton, J. dissenting.

I would reverse the convictions of Jeremy Shawn Walton and Robert Sabb for bank robbery on June 10, 1997 and remand for a new trial.

I.

The evidence proved that Jimmy Baggett robbed the Old Point National Bank on June 9, 1997, and robbed the First Union Bank on June 10, 1997. On each occasion Baggett entered the bank alone. When the police arrested Baggett on June 10, 1997, Baggett was alone at a gas station. A police officer put Baggett in the back of a police car, told Baggett he was under arrest for bank robbery, and read to him Miranda rights. Baggett then made the following statement to the officer:

> [Y]esterday, Monday, the nine, after being up all evening doing crack cocaine in which Drey, Andre, and Hursh, and the guy with the dread-locks in his hair were supplying me, started threatening me. When they found out I didn't have the money to pay then they told me that they were going to take me to the bank, any bank, and I was going to get their money no matter what I had to do. Then they started telling me what they were going to do to me and my family if I didn't pay them.
>
> The guy with the gray sweat shirt put a gun to my head and said, I'm telling you, we don't play. So then the driver of the Cadillac, Andre, told me how to write the letter and what to do when I got in the bank. And if I put a screwdriver under my shirt it would look like a gun.

So some time during the day we went to the bank and I did what they told me while they, Andre, Hursh, Drey and the guy with the gray shirt waited out front of the bank. Then when I went inside the bank I was so high and scared for my life, and my family, I did what they told me.

I was thinking about getting the next hit.  So after we left the bank we went to a place on Monitor Apartment D-1, where we stayed there until dark.  Then we went to the Golden Sands Motel where they gave me more dope, crack.  And I ran into the same problem this time.  They told me to get more money so I could . . . buy crack. . . .

The only difference was Hursh was no longer there.  There was a short guy with a camouflage jacket on that kept giving me crack.  And there was a girl who was a whore, who either of the two did I ever talk to about this.  But on the way to the bank we stopped off at some apartments whether he gave me some crack.  And Andre and the guy with the gray sweat shirt, said don't try nothing slick, because we know where your mom works and we'll get her.

The next thing I remember we were in front of the bank.  I was so high I don't even remember the drive from the apartments to the bank where they gave me the crack. Then I went inside the bank.  Came . . . out, got in the car.  The two guys in the back seat, the guy in the gray shirt and the one in the camouflage jacket were saying go to the Interstate.  Then a guy in a blue pickup pulled up beside us and was looking for crack.  So Drey said pull over and let's make this quick sale.

As soon as the car pulled into Hardees parking lot I was still so high and scared I threw the money on the seat of the car, got out, and ran to Maida where my mom works, where I was arrested.  Also the driver,

>       Andre, said we don't have to worry they
>       didn't see the car and we need gas.  We
>       can't go to the interstate.
>
>       Signed Jimmy Baggett.  I really did not
>       want to do this.

When Walton and Sabb were arrested on June 10, 1997, they were in an automobile with three other people.  Although both men admitted that Baggett earlier had been in the car, they denied knowing Baggett had robbed the bank employees and denied assisting him in the robbery.

## II.

To be admissible as an exception to the rule against hearsay, the statement of a declarant, who is not a party, must meet the following prerequisites:  (1) the declarant must be unavailable; (2) the statement must have been against the declarant's penal interest at the time the statement was made; (3) the declarant must have been aware at the time the statement was made that it was against his interest to make it; and (4) the declaration must be shown to be reliable.  See Ellison v. Commonwealth, 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978); Boney v. Commonwealth, 16 Va. App. 638, 643, 432 S.E.2d 7, 10 (1993).

### Penal Interest

"'A statement's admissibility [as a statement against penal interest] is based on the [declarant's] subjective belief that

he is making admissions against his penal interests.'" Pitt v.
Commonwealth, 28 Va. App. 730, 743, 508 S.E.2d 891, 898 (1999)
(citation omitted) (emphasis in original), reh'g en banc
granted, ___ Va. App. ___, ___ S.E.2d ___ (1999). See also
Chandler v. Commonwealth, 249 Va. 270, 278-79, 455 S.E.2d 219,
224-25 (1995). The record does not support the conclusion that
Baggett was aware his statement was against his penal interest
when he made the statement. Rather, the statement is Baggett's
self-serving explanation that he committed the robbery because
of duress. According to the statement, the men threatened
Baggett because he owed them money, "put a gun to his head,"
told him "what they were going to do to [him] and [his] family,"
and made him commit the robbery to get money to pay his debt.

"The common law defense of duress excuses acts which would
otherwise constitute a crime, where the defendant shows that the
acts were the product of threats inducing a reasonable fear of
immediate death or serious bodily injury." Pancoast v.
Commonwealth, 2 Va. App. 28, 33, 340 S.E.2d 833, 836 (1986).
Baggett's statement clearly is an assertion that he committed
the robberies only because he subjectively believed that he or
members of his family would be killed if he did not do as
ordered by the armed men. His final statement, "I really did
not want to do this" is emphatic evidence that he was attempting
to excuse his conduct by asserting that he was coerced into

–

acting against his will.  Baggett's statement clearly was not truly self-inculpatory.  Furthermore, no evidence tended to prove any circumstances indicating Baggett had a subjective belief he was making an admission against his interest.

### Reliability

The Commonwealth could establish the admissibility of the statement "only upon a showing that [the statement] is reliable."  Ellison, 219 Va. at 408, 247 S.E.2d at 688.  Where, as in this case, a declarant's statement is also inculpatory as to a defendant, it can only be admitted in evidence in the defendant's criminal trial when, additionally, the statement is proved to be trustworthy.  See id.  Nothing about the statement or the circumstances surrounding the giving of the statement imbue it with reliability.  Significantly, the United States Supreme Court has noted that "'the arrest statements of a codefendant have traditionally been viewed with special suspicion.  Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.'"  Lee v. Illinois, 476 U.S. 530, 541 (1986) (citation omitted).

For reasons that I have more fully stated in Pitt, see 28 Va. App. at 766 n.12, 508 S.E.2d at 909 n.12 (Benton, J., concurring in part and dissenting in part), I would hold that

Baggett's statement was untrustworthy because of the circumstances in which it was made. Baggett was under the influence of cocaine; he was being interrogated in police custody; he had a motive to mitigate his own criminal conduct; and he made accusatory statements placing greater blame upon another while seeking to excuse his own conduct. See id. In view of these circumstances, the Commonwealth failed to provide an "affirmative reason, arising from the circumstances in which the statement was made [that] provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial." Idaho v. Wright, 497 U.S. 805, 821 (1990). Thus, the record fails to establish a basis to admit Baggett's statement.

                                III.

I would also hold that the trial judge erred in barring Calvin Williams' testimony. The opportunity of the accused to present a complete defense "would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on . . . credibility . . . when such evidence is central to the defendant's claim of innocence." Crane v. Kentucky, 476 U.S. 683, 690 (1986).

In its case-in-chief, the Commonwealth sought to prove by Baggett's statement that Walton and Sabb engaged in bank robbery and a course of criminal conduct with Baggett on June 9 and June

10.  Walton and Sabb were entitled to attack Baggett's credibility by proving that his narrative of the events was false.  See Deavers v. Commonwealth, 220 Va. 14, 16, 255 S.E.2d 458, 459 (1979); Hummel v. Commonwealth, 217 Va. 548, 550, 231 S.E.2d 216, 217 (1977).  Because the trier of fact determines the credibility of witnesses, Zirkle v. Commonwealth, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949), Walton and Sabb were entitled to offer impeaching evidence that had the tendency to cause the trier of fact to reject Baggett's testimonial statement.  Id. Relevant evidence that tends to impeach a witness' credibility and assists in an accused's defense is always admissible.  See Hummel, 217 Va. at 550, 231 S.E.2d at 217.

The error was not harmless.  Williams' testimony, if believed by the trier of fact, would have provided a basis for the trier of fact to reject Baggett's statement.  Baggett's statement was the only evidence that tied Walton and Sabb to the robbery.  The failure to consider Williams' testimony could not have been harmless because "[t]he excluded testimony addressed the credibility of the only witness against the defendant and the weight to be given to his testimony."  Jury v. Commonwealth, 10 Va. App. 718, 722, 395 S.E.2d 213, 216 (1990).

For these reasons, I dissent.