COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Beales
Argued at Alexandria, Virginia


ROBERT NICHOLAS DODD
                                                            OPINION BY
v.        Record No. 2653-06-4                   JUDGE RANDOLPH A. BEALES
                                                          AUGUST 28, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Marcus D. Williams, Judge

             Lance D. Gardner (Lawrence Smith & Gardner, on brief), for
             appellant.

             Greg Franklin, Assistant Attorney General (Robert F. McDonnell,
             Attorney General; Denise C. Anderson, Assistant Attorney General,
             on brief), for appellee.


        Robert Nicholas Dodd (appellant) was convicted after a bench trial of two counts of

possession of a controlled substance, pursuant to Code § 18.2-250.  He argues on appeal that the

trial court erred in denying his motion to suppress evidence collected after his arrest.  He

contends the officers did not have probable cause for his arrest.  For the following reasons, we

find the trial court did not err, and we affirm his convictions.

                                    I.  Background

        Police encountered appellant on the evening of July 23, 2005, while conducting a

surveillance operation at a 7-Eleven where they knew illegal drug activity occurred.  They first

saw appellant when he arrived in the store's parking lot as a front-seat passenger in a "kind of

. . . beat-up" Dodge Intrepid with a Florida license plate.  Pursuant to a computer check of the

license plate number, the officers learned the registered owner of the car was a woman who had

been declared a habitual offender in Virginia and had had her driver's license revoked.  The

person driving the vehicle at that time was a woman who matched "the descripters [sic] for the registered owner." The officers watched as appellant and the driver exited the car and entered the store. When they came out a short time later, the driver returned to the Intrepid while another "male approached [appellant] on the sidewalk and made contact." The two men spoke briefly and then entered a black pickup truck that had been "backed into a parking spot." While continuing to observe as appellant and the second man sat in the truck for several minutes, the officers determined that the pickup truck was a rental vehicle registered in Maryland. One of the officers, Officer Polowy, testified that "he [couldn't] say [he observed] a hand to hand . . . exchange, but it seemed to him as if [the men] were in the vehicle for a purpose and he thought it was suspicious." Based on "the totality of everything together," the officers "felt that perhaps there was a drug transaction," but that they lacked probable cause to draw such a conclusion at that time.

Although lacking probable cause to believe a drug transaction had occurred, the officers knew the driver of the Intrepid did not have a valid driver's license, and Officer Shughart approached the driver. While Officer Shughart spoke to the driver, Officer Ivancic approached appellant, who was talking on a cell phone, and appellant agreed to speak with Officer Ivancic. After obtaining appellant's identification, Officer Ivancic learned appellant's driver's license was also suspended. Officer Ivancic informed appellant he was suspicious that a drug transaction may have taken place and asked appellant for permission to search his person. Appellant declined that request, but consented to Officer Ivancic's subsequent request to frisk him for weapons. Officer Ivancic found no weapons other than a pocketknife that appellant had pointed out, but in appellant's pants pocket, Officer Ivancic felt a large bulge he suspected was cash. Appellant confirmed the bulge was a roll of money and claimed he had just been paid.

After conferring with the other officers at the scene, Officer Ivancic told appellant he was free to leave. Appellant opted to remain at the 7-Eleven, explaining "his tools for [his] work" as an electrician were in the Intrepid and that he wanted to call a friend to take him and his tools home. Officer Ivancic could see the tools through the window of the car and told appellant he was free to take the tools with him.

Because neither the driver nor appellant was licensed to drive the Intrepid from the scene, Officer Shughart was required to have it towed. While appellant waited for his alternate transportation to arrive, Officer Shughart began to inventory the car's contents in preparation for towing. Inside the car, Officer Shughart found a woman's purse containing two pill bottles that had been converted into smoking devices. The devices contained ashes and appeared to have been used to smoke cocaine or marijuana. In a container or "tin" in the center console beneath the front armrest, the police discovered "numerous items of drug paraphernalia," including marijuana and a piece of suspected crack cocaine. Although one of the officers described the container as a "makeup case" or "makeup purse," only drugs and drug paraphernalia were inside the container. The female driver admitted the purse that contained the two smoking devices was hers, but she denied knowing the container of drugs was in the center console and disclaimed ownership of the container and its contents.

At this point, Officer Ivancic told appellant that he could not leave and that they intended to search him. After Officer Ivancic had begun the search, appellant fled. He was caught and searched again, and Officer Ivancic found heroin and cocaine in a bag removed from appellant's sock. Appellant also had $1,835 in cash and three empty sandwich baggies in his pocket. After the arrest, appellant told Officer Ivancic that he had the drugs "simply [to use[] as like a bartering tool with women . . . [he] bartered sex for those narcotics."

Prior to trial, appellant moved the trial court to suppress the evidence collected after his arrest, arguing that the arrest was without probable cause. Appellant renewed his motion to suppress at trial. The trial court found the officers had probable cause to arrest appellant and denied the motion. Appellant was convicted based on his possession of the heroin and cocaine discovered in his sock.

## II. Probable Cause

> On appeal of the denial of a motion to suppress, we consider the evidence adduced at both the suppression hearing and at trial, DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987), and we view it in the light most favorable to the prevailing party, granting to the evidence all reasonable inferences fairly deducible therefrom, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

Ward v. Commonwealth, 47 Va. App. 733, 742-43, 627 S.E.2d 520, 525 (2006), aff'd on other grounds, 273 Va. 211, 639 S.E.2d 269 (2007).

The parties agree that the ultimate issue is whether the officers had probable cause to arrest appellant. "The Supreme Court 'repeatedly has explained that "probable cause" to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense.'" Thomas v. Commonwealth, 38 Va. App. 49, 53, 561 S.E.2d 754, 756 (2002) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

The offense at issue here was possession of crack cocaine. To arrest for the offense of cocaine possession, an officer must have probable cause to believe "'the defendant was aware of

- 4 -

the presence and character of the drugs and that he intentionally and consciously possessed them.'" Castaneda v. Commonwealth, 7 Va. App. 574, 583, 376 S.E.2d 82, 86 (1989) (en banc) (quoting Andrews v. Commonwealth, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975)).

> Possession need not be actual, exclusive, or lengthy in order to support a conviction; instead, the statute criminalizes constructive or joint possession of illegal drugs of any duration. Constructive possession of illegal drugs may be proven by "'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'"

Wells v. Commonwealth, 32 Va. App. 775, 781, 531 S.E.2d 16, 19 (2000) (quoting Burchette v. Commonwealth, 15 Va. App. 432, 434, 425 S.E.2d 81, 82 (1992) (quoting Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986))). Code § 18.2-250 provides that, "*[u]pon the prosecution* of a person for [possessing a controlled substance as proscribed by Code § 18.2-250], ownership or occupancy of . . . a vehicle . . . in which a controlled substance was found shall not create *a presumption* that such person either knowingly or intentionally possessed [that] controlled substance." (Emphases added). See also Myers v. Commonwealth, 43 Va. App. 113, 119-21, 596 S.E.2d 536, 538-39 (2004) (discussing the difference between a finding of proof beyond a reasonable doubt to prove guilt and the lower standard of probable cause necessary for an arrest). Nevertheless, proximity to the contraband or occupancy of a vehicle in which the contraband was found is a factor that may be considered in determining whether a defendant possessed the contraband, see Drew, 230 Va. at 473, 338 S.E.2d at 845 (citing Code § 18.2-250); Brown v. Commonwealth, 15 Va. App. 1, 9, 421 S.E.2d 877, 882 (1992) (en banc), whether for purposes of proving probable cause or proving guilt beyond a reasonable doubt.

Here, the facts and circumstances available to the officers when they arrested and searched Dodd were sufficient to provide them with probable cause to believe Dodd

- 5 -

constructively possessed the cocaine found in the center console of the Intrepid. The vehicle's registered owner, the only other occupant of the car, admitted possessing the homemade smoking devices found in a purse in the car, but she specifically stated that she knew nothing about the separate container in which the drugs were found and that neither the container nor its contents belonged to her. The fact that she confessed to owning the smoking devices found inside the purse, a criminal offense, added to the credibility of her denial of ownership of the cocaine found in the center console. Cf. Ellison v. Commonwealth, 219 Va. 404, 408-11, 247 S.E.2d 685, 688-89 (1978) (discussing statements against a declarant's interest and reliability).

Other than the driver, the only person known to have recently occupied the vehicle was appellant. Further, appellant had been riding in the front passenger seat, directly beside the center console in which the container of drugs and paraphernalia was found, and he admitted having stowed "a large amount of tools" inside the car. The officers, therefore, were entitled to draw an inference that appellant was comfortable keeping items of his property, including narcotics, in this vehicle. The officers also were entitled to draw the inference that an unnamed third person was unlikely to have left the crack cocaine in a vehicle belonging to another, especially as neither appellant nor the driver mentioned a third person. See Ward, 47 Va. App. at 753 n.4, 627 S.E.2d at 530 n.4 ("Our cases recognize that drugs are a commodity of significant value, unlikely to be abandoned or carelessly left in an area."). Finally, the officers, who encountered appellant while conducting surveillance in a high drug area, were armed with the additional knowledge that appellant had just engaged in suspicious behavior suggestive of a drug transaction with a person traveling in a rental vehicle, and they observed a large bulge in his pants pocket that appellant admitted was a roll of cash.

The totality of the circumstances supported the reasonable inference that the drugs in the center console belonged to appellant, which provided the officers with probable cause to arrest appellant and to search him incident to that arrest.

The decision in Maryland v. Pringle, 540 U.S. 366 (2003), supports our affirmance of the trial court's ruling. Pringle was a front-seat passenger in a car that the police searched pursuant to the driver's consent. Id. at 368. An officer pulled down the back-seat armrest and found cocaine in glassine bags between the armrest and the back of the seat. Id. The officer also recovered $763 from the glove compartment. Id. None of the three men in the car admitted ownership of the cocaine. Id. at 368-69. Pringle was arrested for possessing cocaine and admitted his guilt, but he subsequently moved to suppress his confession, contending the police lacked probable cause to arrest him. Id. at 369. The Supreme Court unanimously held:

> We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

Id. at 372.

The facts here are stronger than those in Pringle in several respects. Here, appellant was one of only two people in a car. The drugs were physically closer to appellant than they were to the defendant in Pringle. Here, because of the pat-down search to which appellant consented, the officer knew prior to the arrest that appellant had a large amount of cash *on his person*, not simply in the glove compartment as in Pringle. Here, appellant engaged in suspicious behavior at night in a known drug trafficking area, whereas in Pringle the men engaged in no action that suggested trafficking or purchasing of drugs, except that they were in a car at night with five

glassine bags containing cocaine.[1]  Here, the female driver denied ownership of the cocaine

found in the front center console of her car, just as the three men in Pringle denied owning the

cocaine found in the backseat of their vehicle.  Here, however, the female driver admitted that

she owned other contraband, which the officers found in a purse also located in the car.  As set

out above, her confession to ownership of the smoking devices, a criminal offense, added to the

credibility of her denial of ownership of the cocaine itself.

The only potentially significant difference between the facts in Pringle and the facts here

concerns the amount of drugs found in the car.  In Pringle, the Supreme Court noted that the

amount of drugs found in the backseat suggested the parties were involved in selling narcotics.

540 U.S. at 373 (discussing Ybarra v. Illinois, 444 U.S. 85 (1979)).  The Supreme Court

explained:

> In Wyoming v. Houghton, 526 U.S. 295, 143 L. Ed. 2d 408, 119
> S. Ct. 1297 (1999), we noted that "a car passenger--unlike the
> unwitting tavern patron in Ybarra--will often be engaged in a
> common enterprise with the driver, and have the same interest in
> concealing the fruits or the evidence of their wrongdoing."  Id., at
> 304-305, 143 L. Ed. 2d 408, 119 S. Ct. 1297.  Here we think it was
> reasonable for the officer to infer a common enterprise among the
> three men.  The quantity of drugs and cash in the car indicated the
> likelihood of drug dealing, an enterprise to which a dealer would
> be unlikely to admit an innocent person with the potential to
> furnish evidence against him.

Id.

Here, no one testified that the quantity of drugs found in the car was inconsistent with

personal use.  The officers recovered only an unknown quantity of marijuana[2] and one "small"

---

[1] The Supreme Court in Pringle did not state the weight of the drugs in the glassine bags. The Maryland Court of Special Appeals noted that "the baggies discovered by Officer Snyder contained .7 grams of cocaine."  Pringle v. State, 785 A.2d 790, 794 (Md. Ct. Spec. App. 2001). The record here does not state the weight of the drugs discovered in the center console.

[2] The record also is silent regarding the packaging of the marijuana.

rock of cocaine from the Intrepid's center console.  Therefore, the evidence here presents a less compelling case for the conclusion that appellant and the driver were engaged in drug dealing.  However, the evidence presents a more compelling case for the conclusion that they were engaged in the common enterprise of ingesting illegal narcotics.  The driver had two smoking devices in her purse, and the container in the center console contained additional drug paraphernalia that the driver said did not belong to her.  Here, also, appellant had a large amount of cash in his pocket,[3] clearly giving him the means to purchase the cocaine.  In addition, as the Supreme Court noted in Pringle, "'a car passenger -- unlike the unwitting tavern patron in Ybarra -- will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.'"  Id. (quoting Houghton, 526 U.S. at 304-05).  The "common enterprise" concept applies equally well to the facts of this case as it did in Pringle, although in relation to usage rather than distribution of drugs.

Even if a reasonable officer could not assume that appellant and the driver shared a common enterprise, the lack of a common enterprise is not critical to the Commonwealth's case, especially given the facts here.  Although Pringle includes "common enterprise" as a factor to consider in determining whether an officer had probable cause, the Court did not hold that "common enterprise" is the controlling factor.  Id.  In fact, the Court specifically eschewed focusing on one factor "in isolation."  Id. at 372 n.2.

The driver here disowned the container in which the crack cocaine was found.  The only other person in the car was appellant.  In Pringle, the officers had no information that pointed specifically to any of the three people in the car as the possessor of the narcotics or as the drug dealer.  Here, the officers had information that specifically excluded the driver as the possessor

---

[3] While the officer did not know the exact amount of the cash in appellant's pocket before the search incident to arrest, he discovered during the earlier pat-down search that appellant had a significant number of bills in his pocket.

of the cocaine. Appellant was, logically, the only other person in the car who could be responsible for the cocaine.

We conclude that the court did not err when, in denying appellant's motion to suppress, it held that "[a]ll the circumstances combined" provided the officers with probable cause to arrest appellant. The officers were entitled to rely on the driver's statement that she owned the purse and its contents but that she did not own the marijuana or crack cocaine or the container in which they were found. The only other person in the car was appellant. The officers also knew that appellant was in a drug trafficking area at night, was sitting in the front seat of the car within easy reach of the drugs, had other possessions in the car, had acted suspiciously after he arrived at the 7-Eleven, and had a large amount of cash in his pants pocket. Based on the totality of the circumstances, the officers acted on a reasonable belief that they had probable cause to arrest appellant for possession of the drugs discovered in the car.

On brief, appellant also argues that, because Pringle involved a Maryland statute and the Maryland statutes differ from the Virginia statues, the analysis in Pringle does not apply here. We disagree. Pringle does not rely on the wording of a Maryland statute, but instead discusses constitutional principles that are equally applicable here. Similarly, appellant's argument relies on the constitutional principle of probable cause rather than on the wording of the Virginia Code. As the Virginia statute he cites, Code § 18.2-250, does not address arrest and probable cause, but instead defines the crime of possession of a controlled substance and limits the presumptions a fact finder can use in determining guilt beyond a reasonable doubt, this statute does not apply to the analysis here. The question before us here relates only to the standard of proof for probable cause (i.e., reasonable person) -- not the standard of proof for guilt (i.e., beyond a reasonable doubt). See Myers, 43 Va. App. at 119-21, 596 S.E.2d at 538-39.

Appellant also argues that, as the police found the crack cocaine in a "makeup purse" -- a container that appellant, a man, would not have used -- the police did not have probable cause to believe he possessed the cocaine. However, the fact that a container is characterized as masculine or feminine does not preclude a person of the opposite gender from possessing or using it. In addition, appellant's argument ignores the fact that the driver, while admitting ownership of the purse containing the smoking devices, specifically denied ownership of the container in which the cocaine and marijuana were found, permitting the officers to conclude that appellant was its only possible possessor. No characteristically "female" items, such as makeup, were found in the container, and the record contains no explanation as to why the officer who found it characterized it as a "makeup case." Another officer characterized the item as a "tin." Viewed in the light most favorable to the Commonwealth, which we must do on appeal, given the Commonwealth prevailed before the trial court, the container could just as easily have been characterized in a gender-neutral fashion as a "drug case."

## III. Conclusion

We hold the trial court did not err in denying appellant's motion to suppress, and we affirm the convictions.

<u>Affirmed.</u>

Benton, J., dissenting.

"[L]ong-prevailing standards [of probable cause] . . . safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." Brinegar v. United States, 338 U.S. 160, 176 (1949); see also Dunaway v. New York, 442 U.S. 200, 208 (1979). Equally long-standing is the rule "that a person, by mere presence in a suspected car, [does not lose] immunities from search of his person to which he would otherwise be entitled." United States v. Di Re, 332 U.S. 581, 587 (1948). In a recent case involving the arrest of a passenger in a car, the Supreme Court reiterated that the probable-cause standard "deals with probabilities and depends on the totality of the circumstances," that "'[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,'" and that a police officer's "belief of guilt must be particularized with respect to the person to be searched or seized." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citations omitted). These standards are designed to avoid leaving "citizens at the mercy of the officers' whim or caprice." Brinegar, 338 U.S. at 176.

When the historical facts of this case are viewed from the standpoint of an objectively reasonable police officer, they do not amount to probable cause. At best, this case is about an officer who had a suspicion that Robert Nicholas Dodd was involved in unlawful activity, which is something less than probable cause. Even if that suspicion rose to the level of reasonable suspicion to believe Dodd was involved in criminal conduct that was not probable cause to arrest him for a crime. See Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000); Ewell v. Commonwealth, 254 Va. 214, 216-17, 491 S.E.2d 721, 722-23 (1997). Probable cause means something more than "suspicion, or even 'strong reason to suspect.'" Henry v. United States, 361 U.S. 98, 101 (1959); see also Brown v. Commonwealth, 270 Va. 414, 421, 620

- 12 -

S.E.2d 760, 764 (2005). Furthermore, where probable cause is lacking at the moment of arrest, the arrest is unlawful. Beck v. Ohio, 379 U.S. 89, 91 (1964).

The evidence proved a woman drove her car to a convenience store about 11:00 p.m. She and Dodd, her passenger, entered the convenience store and made purchases. As the woman and Dodd exited the convenience store, a man who was Dodd's friend stopped Dodd and talked to him. When Dodd later exited his friend's truck, police officers detained Dodd and his friend on a hunch they had been involved in a drug transaction. They released both men, however, and told them they were free to leave.

As this occurred, other police officers arrested the woman, charging her with driving while being in the status of an habitual offender. After the officers arrested the woman, Officer Shughart searched the car, which was registered to the woman, and found a purse within the closed center console between the driver's and passenger's seats. Inside the woman's purse, he found "two pill bottles that had . . . holes punctured in [them], and they had ashes that someone would use marijuana or cocaine to smoke in." Officer Ivancic described the discovery as "a pipe that could be used to ingest crack or marijuana"; he examined "the bottle and confirmed it was in fact contraband." The woman admitted owning the purse containing the devices.

Inside the same console, Officer Shughart also found what he variously described as a "cosmetic case," "a makeup purse," or "a personal makeup case." In that "cosmetic case," he found "a small rock of cocaine and some marijuana." Officer Shughart testified the woman "denied any knowledge of it . . . [and] made no claim to that."

After the discovery of this contraband in the car, Officer Ivancic arrested Dodd. The officer told Dodd "he was the recent occupant of a vehicle that contained narcotics, and that [Officer Ivancic] was going to be searching his person." Officer Ivancic testified that, before Officer Shughart discovered the contraband in the car, "[t]here was no probable cause that

allowed [him] to search [Dodd]." When he searched Dodd, he found contraband in Dodd's pocket. After this arrest and search, Dodd fled but was immediately captured. The officer's further search led to discovery of cocaine. The trial judge ruled the initial arrest was lawful and that the ensuing search was incident to the arrest.

Although Officer Ivancic arrested Dodd based on the cocaine found in the car, he had no facts available to him that provided a particularized and objective basis to believe Dodd was involved in a crime. See Ybarra v. Illinois, 444 U.S. 85, 91 (1979) (holding that "[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person"). Indeed, Officer Ivancic did not charge Dodd with possession of the cocaine, marijuana, or paraphernalia found in the car. Instead, he charged Dodd with possession of the cocaine found on his person during the search he conducted after seizing Dodd due to the discovery of drugs and contraband in the woman's car.

In Pringle, where an officer arrested three men in a car at 3:00 a.m. after he found drugs in the car, the Supreme Court upheld the arrest of a passenger, noting "it was reasonable for the officer to infer a common enterprise" among the occupants of the car because "[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing." 540 U.S. at 373. Those circumstances, which particularized the probable cause by linking the occupants of the car to the drugs in the case after "no one admitted to ownership," 540 U.S. at 368, do not exist in this case. Here, the woman acknowledged owning the purse containing paraphernalia and residue of drugs. No facts or circumstances tended to indicate Dodd was aware of the presence of those items. They were not openly displayed in the car; they were within a woman's purse; and they were stored inside the closed console next to the woman who was driving the car. Moreover, the facts known to the police officers did not indicate that the one small piece of crack cocaine and the undisclosed quantity of marijuana within the cosmetic case were a quantity associated with drug

distribution. This contraband and the other drugs were only indicative of the woman's personal use of drugs.

The majority opinion simply speculates when it concludes the woman and Dodd "were engaged in the common enterprise of ingesting illegal narcotics." Although the woman's possession of two smoking devices was not explained, the record established that the devices could be used to ingest either marijuana or cocaine, both of which were in the cosmetics case. A reasonable inference might suggest one pipe for each substance. However, no facts tend to establish Dodd knew any of the items were present and no officer testified that he detected an odor of marijuana or cocaine in the car. The only common enterprise suggested by the evidence in this case was Dodd's trip with the woman to make a purchase inside the convenience store.

Furthermore, unlike in Pringle, where no one claimed ownership of the contraband, the woman who owned and drove this car admitted she owned the devices used to ingest cocaine and marijuana. In view of her confession and the nature of the container holding the crack cocaine and marijuana (a woman's cosmetics case), no reasonable officer could conclude there was probable cause to believe Dodd possessed a woman's makeup purse or cosmetics case and its contents.

In Di Re, the Supreme Court held that when police officers have information that points to criminal culpability of one of several persons in an automobile, the officers cannot lawfully arrest everyone.

> [W]hatever suspicion might result from Di Re's mere presence [in the automobile] seems diminished, if not destroyed, when Reed, present as the informer, pointed out Buttitta [the owner and driver of the car], and Buttitta only, as a guilty party. No reason appears to doubt that Reed willingly would involve Di Re if the nature of the transaction permitted. Yet he did not incriminate Di Re. Any inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person.

332 U.S. at 594.

- 15 -

The reasoning is analogous here. Although the woman was not an informer in the strict sense of that term, she did, by her confession, point to herself as the culpable party. In view of her confession that she owned the purse with the devices used for ingesting cocaine and marijuana, a reasonable police officer obviously could infer her ownership of the cocaine and marijuana in the woman's cosmetic case found in the same console as the purse. However, without any factual basis tying Dodd to these items, the officer could not have reasonably concluded Dodd was aware of or possessed the small piece of cocaine found in a woman's cosmetic case. The only reasonable inference to be drawn from these facts is that the items in the cosmetics case belonged to the woman, who was the driver and the owner of the car and who possessed the smoking device with residue.

The majority opinion suggests that "logically" Dodd was "the only other person . . . who could be responsible for the [small piece of] cocaine" and the marijuana in the cosmetics case. From the evidence that the woman "denied any knowledge" of the cosmetics case, the majority posits that, therefore, the woman's cosmetics case belonged to Dodd. The majority's reasoning is a *non sequitur*. Assuming the officer could reasonably believe the woman did not own the precise substances that her devices were created to ingest, nothing in her statement to the police excluded ownership of the cosmetics case by any other person, such as a woman who had earlier been in the car.

Citing Ellison v. Commonwealth, 219 Va. 404, 408-11, 247 S.E.2d 685, 688-89 (1978), the majority opinion concludes the officer could believe the woman was credible when she denied that the "personal makeup case" or "cosmetics case" was hers because the officer could have deemed her acknowledgement that the purse was hers to be a statement against her interest. Although the officer testified the woman "denied any knowledge of the makeup case," he also testified "she wasn't being straight forward" answering his questions. Neither officer testified he

- 16 -

believed the woman was credible.[4] Indeed, the fact that the officers charged the woman, not Dodd, for the cocaine and marijuana found in the car is manifestly evidence they disbelieved her denial. As the Supreme Court has noted, "[o]ne of the most effective ways to lie is to mix a falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." Williamson v. United States, 512 U.S. 594, 599-600 (1994). In any event, the woman's statement did not inculpate Dodd as the owner of the cosmetics case.

The majority opinion also concludes for another reason that the woman's denial of ownership indicates the "small" piece of crack cocaine and the marijuana must have been owned by Dodd. It holds that the officers were entitled to draw an inference that no other person owned

---

[4] Even setting aside this gap in the majority's reasoning, Ellison involved a trial evidentiary rule and is not supportive of the proposition espoused by the majority opinion. Moreover, the United States Supreme Court in Lilly v. Virginia, 527 U.S. 116, 133 (1999), cited Ellison and rejected as untrustworthy the use of an accomplice's confessions to inculpate a defendant.

> It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those "hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability." White [v. Illinois], 502 U.S. [346, 357 (1992)]. This view is also reflected in several States' hearsay law. Indeed, prior to 1995, it appears that even Virginia rarely allowed statements against the penal interest of the declarant to be used at criminal trials. See, e.g., Ellison v. Commonwealth, 219 Va. 404, 247 S.E.2d 685 (1978). That Virginia relaxed that portion of its hearsay law when it decided Chandler v. Commonwealth, 249 Va. 270, 455 S.E.2d 219 (1995), and that it later apparently concluded that all statements against penal interest fall within "a 'firmly rooted' exception to the hearsay rule in Virginia," [Lilly v. Commonwealth,] 255 Va. [558,] 499 S.E.2d [522,] 534 [(1998)], is of no consequence. The decisive fact, which we make explicit today, is that accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence.

Lilly, 527 U.S. at 133-34.

the items because they had significant value and "an unnamed third person was unlikely to have left the crack cocaine in a vehicle belonging to another." The facts, however, do not support the premise. No evidence proved this small piece of crack cocaine was "a commodity of significant value." Likewise, the record contains no evidence of the quantity or value of the marijuana except for the proof that the cosmetic case holding it was a "small tin." This evidence leaves it just as likely that the items were merely residues of substances left from the woman's use. In addition to the lack of proof the drugs were of a usable quantity or of any significant value, the facts before the officer pointed to the likely owner of the cosmetics case being the woman driver or another woman friend.

I also disagree, therefore, with the majority opinion's assertion that a police officer could reasonably conclude that Dodd, the male passenger in the car, had ownership interest in a woman's "personal makeup case" or "cosmetic case" that was found in the same closed compartment as the woman's purse. Probable cause "deals with probabilities" that "must be particularized" to the individual. Pringle, 540 U.S. at 371. In this case, the woman who owned the car and the purse containing the devices for smoking cocaine and marijuana was present. She did not say the "personal makeup case" belonged to Dodd. No officer testified that Dodd wore makeup. Even if the officer could have believed the woman's denial of ownership, that denial did not implicate Dodd. The evidence proved it was not his car, and the evidence did not suggest he would have owned or possessed a cosmetics case.

The totality of the evidence in this case established that the officers were merely suspicious of Dodd because he had been talking to his friend in his friend's truck. Even reasonable suspicion, however, requires more than an "'inchoate and unparticularized suspicion or "hunch."'" Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). The discovery of the small piece of cocaine in

the cosmetics case in the car added nothing to the facts and circumstances known by the officers about Dodd. "Probable cause to arrest must exist exclusive of the incident search." Carter v. Commonwealth, 9 Va. App. 310, 312, 387 S.E.2d 505, 506 (1990); see also Rios v. United States, 364 U.S. 253, 261-62 (1960).

I believe that it is significant that the officers did not charge Dodd for the cocaine and marijuana found in the woman's "personal makeup case" and that they did arrest and charge the woman for possession of the crack cocaine and marijuana they found in the "personal makeup case." Obviously, they arrested her because they disbelieved her denial of ownership and concluded the "personal makeup case" (or cosmetics case) was hers. Simply put, the facts and circumstances available to the officer would not have caused a reasonable police officer to have probable cause to believe Dodd possessed the cocaine found in a woman's cosmetics purse stored in the console of the woman's car or to believe he otherwise was engaged in criminal conduct. The discovery of those items pointed not to Dodd but, rather, solely to the woman. For these reasons, I would hold the trial judge erred in refusing to suppress the evidence.