COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


LARRY DANIEL WALKER, JR.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1724-07-3                      JUDGE SAM W. COLEMAN III
                                                        OCTOBER 21, 2008
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                            Charles J. Strauss, Judge

            Mark T. Williams (Williams, Morrison, Light & Moreau, on brief),
            for appellant.

            Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Larry Daniel Walker, Jr. appeals from his bench trial conviction for grand larceny.  On

appeal, he contends the trial court erred (1) by excluding evidence of a third party confession

which was admissible as a statement against penal interest exception to the hearsay rule, and

(2) by finding the evidence sufficient to support his conviction.  We disagree and we affirm his

conviction.

                                      BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

William Sexton, supervisor for Lambert Cable Splicing Company, testified at appellant's bench trial that two spools of copper wire were stolen from a Sprint substation located off of Highway 58 in May 2006. Sexton reported the theft to the police.

Heather Bolling (Heather) testified that in May 2006, she was driving appellant and her father, Michael Bolling (Michael), in a minivan on Highway 58 when her father directed her to stop. After she did so, appellant and Michael exited the vehicle and loaded two spools of wire into the van. She then drove them to the Bolling residence. Early the next morning, appellant and Michael left in the van, returning about an hour or two later. Later that evening when Heather used the van, the spools were no longer inside.

Investigator Williams, who investigated the theft, went to the Bolling residence on August 9, 2006. He testified that he saw two empty spools in the backyard, from one of which he removed a "Sprint" label. Williams showed Heather the empty spools, after which she took Williams to the Sprint substation from which they had been stolen. When Williams showed the recovered label to Sexton, he identified it as having come from one of the stolen spools.

In appellant's defense, his mother, wife, son and neighbor testified on his behalf. Each testified they had attended a cookout at appellant's home in late May or early June of 2006 when Michael, Sr., Heather, and Michael Bolling, Jr. arrived in a minivan. The witnesses said they saw two spools in the Bollings' van after it arrived. According to the witnesses, appellant walked over to the van, spoke with the Bollings, and the Bollings then left.

Appellant testified and denied that he was with Michael Bolling when the spools of wire were stolen. He testified that when the Bollings came to his cookout, Michael asked to borrow money from him, which he refused. He said Michael then showed him two spools of wire in the van, which Michael said he could sell the next day to repay a loan.

Appellant testified that a week later he accompanied Michael to see a roofing customer to help provide an estimate for repairing a roof.  After meeting with the customer, appellant said that Michael stopped at the Sprint store along Highway 58, picked up a two-foot long piece of wire and then left.  Appellant said he never exited the van, and appellant immediately drove him back to his home.

During rebuttal, Investigator Williams testified that when he interviewed appellant on August 9, 2006 about the missing spools of wire, appellant told him that he had been to the Sprint store once at which time, he, not Michael, took a piece of wire about three or four feet long.  He later said Michael took the piece of wire.  During the August 9th conversation with Williams, appellant denied taking the spools of wire and never mentioned to Williams that the Bollings had come to his spring 2006 cookout and had two spools of wire in their van at the time.

The trial court denied appellant's motion to strike the evidence and found appellant guilty of grand larceny.

## EXCLUSION OF HEARSAY TESTIMONY

Appellant argues the trial court erred in refusing to allow his mother, Janet Popoca, to testify about an incriminating hearsay statement she overheard Michael Bolling make at the 2006 cookout.

During the presentation of its case-in-chief, the Commonwealth called Michael Bolling as a witness.  The following exchange took place:

> Q.  Mr. Bolling, the case before Mr. Walker, I mean before the Court involves Larry Walker on a charge of larceny from Lambert Cable Splicing Company.  Have you been indicted - -
>
> A.  Yes, yes.
>
> Q.  And has your case already been disposed of - -
>
> A.  Yes.

Q. - - through trial and sentencing?

A. Yes.

* * * * * * *

Q. Are you willing to testify today with regard to that matter?

A. I'd rather not say nothing at all if I could.

MR. GRIMES: All right. I have no further questions of this witness.

MR. WILLIAMS [Appellant's attorney]: Judge, I don't believe I have any cross of - -

THE COURT: Thank you. You can stand down, sir.

Appellant asked Michael no questions, and the Commonwealth called another witness.

After the Commonwealth rested its case-in-chief, Popoca testified on appellant's behalf. She described a cookout at appellant's house at which the Bollings arrived in their van.[1] During her direct examination, appellant's attorney asked Popoca about a conversation she allegedly overheard between appellant and Michael at the cookout. The following took place:

MR. WILLIAMS: Judge, I believe she's going to testify what Mr. Bolling said and I would contend that's a statement against interest and would be admissible.

MR. GRIMES: Judge, that's looking for a third party confession that's not admissible.

MR. WILLIAMS: It would be, we would contend, if he's unavailable and he's unavailable to us.

THE COURT: Have you called him?

MR. WILLIAMS: He's already been called.

THE COURT: All right.

_____

[1] Popoca initially testified that the cookout took place in March 2006. When asked if it indeed was in March, she testified, "I can't remember. All I know it was a cookout. I went to it."

- 4 -

MR. GRIMES: Judge, he truly does not have a Fifth Amendment privilege. I elected not to question him further. He's already been adjudicated. So he's not unavailable in a legal sense and certainly he's physically present.

THE COURT: All right. I agree. I mean, I think you have to call him and he, he did not want to answer Mr. Grimes' question but that, he didn't take the Fifth Amendment and Mr. Grimes didn't push him on it.

MR. WILLIAMS: He, Mr. Grimes asked him if he was represented and he asserted such and was asked if he wanted to talk and said no.

THE COURT: Okay. All right, I'm, I'm going to sustain the objection at this point.

Appellant then continued to question the witness but admonished her not to discuss "what anybody said." At no point thereafter did appellant call Michael as a defense witness.

"'[I]t is settled in Virginia that, while a declaration against penal interest is recognized as an exception to the hearsay rule, such a declaration made out of court by a dead or otherwise unavailable witness is admissible only upon a showing that the declaration is reliable.'" Morris v. Commonwealth, 229 Va. 145, 147, 326 S.E.2d 693, 694 (1985) (quoting Ellison v. Commonwealth, 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978)).

Before we need to consider the reliability of Popoca's testimony as to what Bolling may have said or whether Popoca's testimony was properly proffered, we first decide whether Bolling was an "unavailable" witness. "The party offering the hearsay testimony has the burden of establishing the witness' 'unavailability.' Determining whether the offering party has met its burden and, thus, whether the declarant is 'unavailable,' is left to the trial court's discretion." Jones v. Commonwealth, 22 Va. App. 46, 50, 467 S.E.2d 841, 843 (1996).

In Paden v. Commonwealth, 259 Va. 595, 529 S.E.2d 792 (2000), the trial court admitted into evidence, over Paden's hearsay objection, a codefendant's hearsay statement against penal interest. The codefendant was present in the courtroom and the codefendant's attorney indicated

the codefendant was prepared to testify, but the Commonwealth never called him to the stand, and he never asserted his Fifth Amendment right against self-incrimination. Id. at 596, 529 S.E.2d at 793. The Commonwealth argued that the witness was unavailable because he could not be compelled to give evidence against himself. Id. The trial court agreed, and a police officer was allowed to testify about the statement. The Virginia Supreme Court reversed, holding that the evidence failed to establish that the witness was unavailable to testify. "[U]ntil [a witness] assert[s] his right against self-incrimination," he remains "available to testify." Id. at 597, 529 S.E.2d at 793.

Here, although Michael stated he would prefer to say nothing as a witness, he was asked no incriminating questions about his participation in the crime and he did not assert his Fifth Amendment right against incrimination at any time. Appellant did not cross-examine Michael nor did he call Michael as a defense witness or ask him about any statement.

Because Michael never invoked his Fifth Amendment right against self-incrimination, as the Paden case holds, appellant failed to establish that Michael was unavailable. Accordingly, the trial court did not err in refusing to allow Popoca's testimony that Michael allegedly made a confession or out-of-court statement against his penal interest.

SUFFICIENCY OF THE EVIDENCE

Appellant asserts the evidence was not sufficient to support his conviction for grand larceny. He argues that Heather's testimony "was not credible and was not corroborated by any other evidence of guilt."

Heather provided detailed testimony implicating herself, Michael, and appellant as the persons who took the wire. She further testified that Michael and appellant disposed of it early the next morning.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Moreover, "[t]he conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the] [witnesses'] . . . testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (*en banc*) (quoting Robinson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991)).

Heather's testimony was not inherently incredible, nor was it contrary to human experience, and, sitting as fact finder, the trial court believed her testimony and rejected the testimony of appellant's witnesses. In rejecting appellant's evidence, the trial court noted and commented on certain discrepancies in the details of the cookout from appellant's witnesses. Moreover, the trial court found it unusual that neither appellant nor any of his witnesses mentioned to the police either during Williams' August 2006 investigation or before trial the May 2006 incident at appellant's cookout, during which time appellant and his witnesses claimed they saw two spools of wire in the Bollings' van. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of grand larceny.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.