COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Chafin and Decker
Argued at Norfolk, Virginia

CHRISTOPHER DAWAYNE SLEDGE, JR.

                                                  MEMORANDUM OPINION* BY
v.        Record No. 1338-16-1             JUDGE ROSSIE D. ALSTON, JR.
                                                    JULY 5, 2017

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
David F. Pugh, Judge

Charles E. Haden for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Christopher Dawayne Sledge, Jr. (appellant) appeals his conviction for malicious

wounding in violation of Code § 18.2-51.  Appellant argues that the trial court erred in denying

appellant's motion to strike.  Specifically, appellant argues that the evidence indicated that he

accidentally struck the victim, and that even if the blow was inflicted intentionally, the

Commonwealth's evidence failed to establish that appellant acted with malice.  We disagree, and

affirm the decision of the trial court.

BACKGROUND

On October 8, 2015, when Hanna Karetka (Hanna), Julia Rosander (Julia), Sonjineke

Gonzalez (Sonjineke), and Jessica[1] returned home, they found appellant and his friend waiting

for them in front of their apartment.  Appellant and his friend repeatedly told them that they had

_____

*Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The record does not reflect Jessica's last name, and thus, this opinion uses first names
for consistency.

UNPUBLISHED

been drinking since 1:00 p.m. that day. When they went inside, everyone but Sonjineke drank

and played card games. After some time, Hanna noticed that appellant was somewhat

intoxicated and flirting with Julia and Sonjineke. When Hanna saw Julia and appellant outside

smoking, Hanna told Julia to come inside because earlier in the night Julia had asked Hanna to

look out for her. Sonjineke testified that appellant was being "very touchy-feely" and that Julia

seemed like she did not want to be touched. When appellant came inside, he called Hanna a

bitch. At this point Hanna asked appellant to leave, which he did not do. Julia also testified that

she told appellant to leave, but he refused to do so.

At one point, Sonjineke testified that they tried to close the door, but appellant was

banging and pushing them all as they leaned against the door. Hanna came back out, after going

into another room to use her phone, and saw appellant and Julia "wrestling or, like, arguing and

tussling at the door." Hanna grabbed Julia by the arm, and as she did, appellant hit Hanna in the

face with a liquor bottle, which he held with a closed fist. Hanna fell to the ground. Julia

testified that as soon as appellant got outside the community door, he pushed her. She stated: "I

went off to the side a little bit. And then he came around me with the bottle in his hand and

punched Hanna in the mouth. And that's when the damage happened with her teeth. And then

she fell on top of me."

Sonjineke testified that appellant

> struck his hand forward. I don't really know if anybody struck
> him, but he struck his hand forward. And when he did, it was the
> hand that had the bottle in it, and that hit me in my head. I
> stumbled back, and Hanna -- if I'm not mistaken, it was Hanna --
> and I both fell. I fell into the hallway, and I stumbled back upon
> somebody. And after that, once I got up and kind of -- you know, I
> was a little bit shooken [sic], but once I got up, I did realize that he
> and Julia were outside, going at it at that point. As I was, you
> know, fully getting up and going to go inside to grab my phone for
> help, I just hear yelling and screaming. And I looked outside of
> the apartment window, and that's when I noticed that he took the

bottle, and he struck Hanna in her mouth with the bottle, and she flew back.

Sonjineke further stated that appellant swung his arm back and that when he did the bottle made full contact with Hanna's mouth. Julia stated that after Hanna ran inside, appellant was trying to fight her: "I had one hand on his shirt, and the other, I was swinging at him with." Sonjineke, who had not been drinking, said that everyone was moving at the same time during the scuffle. She did, however, indicate that after appellant hit Hanna, Julia "was trying to stop [appellant]. He was, obviously, trying to gun for her face, but she was blocking some of the hits; they were making contact." After appellant's friend wrestled him to the ground, Julia was able to go inside and saw Hanna with blood gushing from her mouth.

When she got up, Hanna thought that some of her teeth had fallen out and noticed that her mouth was full of blood. None of Hanna's teeth actually fell out of her mouth but her teeth were broken, and some of her bottom teeth were still broken when she testified at trial. Hanna testified that she had to get stitches in both her upper and lower lips, and stated that she had blood on her head, cheek, and lips. Hanna has had about fifteen appointments with doctors to remedy the damage.

At trial, Hanna testified that she knew appellant hit her "[b]ecause he was directly in front of Julia, and the last thing [she] remember[ed was] seeing his hand come towards [her] face with the bottle in it." Hanna testified that Julia is taller than she is, and while Julia was in front of her, Julia ducked, allowing appellant to hit her.

After the Commonwealth rested, appellant moved to strike the evidence arguing that he did not have the requisite intent because Sonjineke, who had not been drinking, testified that everything happened instantaneously. He also argued that the bottle was inconsistent with the injury because there was no blood on the bottle, the officer did not clean the bottle, and the bottle

- 3 -

was not broken. The trial court denied the motion, stating that it may infer specific intent or intent from the assault or the hitting itself.

Appellant testified in his own defense and stated that Julia pushed him and he fell back. According to appellant, Julia and appellant began arguing and appellant called her a name. Julia started swinging because appellant called her a name, she hit him, and appellant fought back. Eventually, the friend who came with him took appellant down to the ground to control the fighting. Appellant stated that Julia spat in his face and hit him four times. Furthermore, according to appellant, the other girls then came rushing out of the house and jumped on appellant. When asked if he was trying to hurt anyone, appellant responded that "[i]t was blow for blow. It was defending. I don't know. I don't even know." He did not recall leaving the home with the liquor bottle.

After resting his case, appellant renewed his motion to strike, which the trial court denied. At the end of the evidence, the trial court found appellant guilty of malicious wounding. In making its findings, the trial court indicated that the case law allowed it to infer specific intent based upon the totality of the circumstances, as well as the type of blow itself. Accordingly, the trial court found that the "blows [were] with such force or violence [that] it would be sufficient to show the specific intent . . . necessary under the statute." The trial court then stated that Hanna had to go to a dentist at least fifteen times to repair the physical damage she sustained. Further, the trial court stated that appellant's "testimony is somewhat disbelieving by the [trial c]ourt, and the [trial c]ourt does disbelieve his testimony." Finally, the trial court noted that appellant testified that he did not even know if he intended to hurt anyone.

At the sentencing hearing, the trial court sentenced appellant to twelve years' incarceration, with nine years of incarceration suspended. This appeal followed.

ANALYSIS

Appellant argues that the trial court erred in denying his motion to strike because one of the Commonwealth's witnesses "seemed to indicate that appellant struck Hanna . . . accidentally." Alternatively, appellant argues that even if he intended to inflict the blow, the Commonwealth's evidence was insufficient to establish that appellant acted with malice. We disagree.

"Under well-established law, 'the evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court,' the Commonwealth." Johnson v. Commonwealth, 53 Va. App. 79, 99, 669 S.E.2d 368, 378 (2008) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). Using this principle, we must "discard the evidence of the accused in conflict with that of the Commonwealth." Johnson, 53 Va. App. at 99, 669 S.E.2d at 378 (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)). Finally, when considering the sufficiency of the evidence,

> this Court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' but instead asks 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'

Johnson, 53 Va. App. at 100, 669 S.E.2d at 378 (citation omitted). This deferential standard of review "applies not only to the historical facts themselves, but the inferences from those facts as well." Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2, 588 S.E.2d 384, 387 n.2 (2003).

"While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Hudson, 265 Va. at 514, 578 S.E.2d at 786 (quoting Derr v.

Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)). "The issue upon appellate review is not whether 'there is some evidence to support' [the] hypotheses [deduced at trial]." Id. at 513, 578 S.E.2d at 785. Rather, "[t]he issue is whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [appellant's] theories in his defense and found him guilty of [malicious wounding] beyond a reasonable doubt." Id.

Code § 18.2-51 states that "[i]f any person maliciously shoot[s], stab[s], cut[s], or wound[s] any person or by any means cause[s] him bodily injury, with the intent to maim, disfigure, disable, or kill," he is guilty of malicious wounding." Malicious wounding requires both intent and malice. Williams v. Commonwealth, 64 Va. App. 240, 253 n.3, 767 S.E.2d 252, 259 n.3 (2015). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words or inferred from acts and conduct which necessarily result in injury." Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993) (quoting Christian v. Commonwealth, 221 Va. 1078, 1081, 277 S.E.2d 205, 207 (1981)). Malice is exhibited when the accused commits a purposeful and cruel act with little to no provocation. Branch v. Commonwealth, 14 Va. App. 836, 841, 419 S.E.2d 422, 426 (1992). The question as to whether malice exists is one left to the fact finder. Robertson v. Commonwealth, 31 Va. App. 814, 823, 525 S.E.2d 640, 645 (2000).

"Intent is the purpose formed in a person's mind at the time an act is committed. Intent may, and often must, be inferred from the facts and circumstances of the case, including the actions and statements of the accused." Johnson, 53 Va. App. at 100, 669 S.E.2d at 378 (quoting Commonwealth v. Taylor, 256 Va. 514, 519, 506 S.E.2d 312, 314 (1998)). The fact finder may infer that a "person intends the natural and probable consequences of his or her acts." Johnson, 53 Va. App. at 100, 669 S.E.2d at 378 (quoting Velasquez v. Commonwealth, 276 Va. 326, 330, 661 S.E.2d 454, 456 (2008)). Whether a defendant possessed the requisite intent rests with the

fact finder. Johnson, 53 Va. App. at 100-01, 669 S.E.2d at 378 (citing Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977)).

Here, the evidence established that appellant was asked to leave the apartment numerous times but failed to do so. He used derogatory language toward the females as he resisted leaving their home. Sonjineke testified that they tried to shut the door behind appellant when they were finally able to get him to walk toward the door, but that he pushed up against the door, and was banging and trying to come back in. At this point, the testimony showed that appellant threw his fists around frantically. He struck Sonjineke and tried to fight Julia as she "had one hand on his shirt, and the other, [she] was swinging at him with." Sonjineke testified that she "noticed that [appellant] took [a liquor] bottle, and . . . struck [Hanna] in her mouth with the bottle, [causing her to fly] back." Julia further stated that appellant was "eventually . . . wrestled to the ground by [his friend]. [She then] went inside to look at what was wrong with [Hanna], and [Hanna] was gushing blood from her mouth."

Hanna testified that Julia and appellant were fighting and that she was behind Julia, which Julia's testimony confirmed. Hanna stated that at one point during the tussle, Julia ducked and appellant hit her in the face with the liquor bottle, which he held with a closed fist. The blow was with such extreme force that Hanna fell to the ground only to realize that several of her teeth had been badly broken and cracked, and blood was gushing from her mouth.

Appellant testified, in his defense, that he left when Julia asked him to leave. Appellant stated that Julia pushed him and he fell backward. He said that after he began to fight with Julia, his friend took him down to the ground to control the fighting. At this point, Julia spit in appellant's face and hit him four times. Appellant did not recall having the liquor bottle when he left the house. When asked if he was trying to hurt anyone, appellant stated that "[i]t was blow

for blow. It was defending. I don't know. I don't even know." In its findings, the trial court stated that it did not find appellant's testimony credible.

"In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant. Id. at 510, 500 S.E.2d at 235 (quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)). Here, the trial court was within its power to disregard the inconsistencies between appellant's testimony and the victim's testimony, which was largely consistent with the Commonwealth's other witnesses. As such, the evidence as a whole was sufficient to prove that appellant intentionally hit Hanna, either directly or accidentally under a theory of transferred intent when Julia moved. See, e.g., Long v. Commonwealth, 8 Va. App. 194, 198, 308 S.E.2d 473, 476 (1989); see also Blow v. Commonwealth, 52 Va. App. 533, 542, 665 S.E.2d 254, 258 (2008) (holding that transferred intent remains "a viable part" of Virginia law).

From the evidence and considering the exhibits showing the condition of Hanna's teeth before and after the incident, the trial court found that the blows were "with such force or violence," that the evidence was sufficient to show the specific intent necessary under the statute. The trial court "was entitled to evaluate [appellant's] theory of innocence upon consideration of all the evidence and the reasonable inferences that flow from that evidence." Hudson, 265 Va. at 517, 578 S.E.2d at 787. It is clear, however, that the trial court rejected appellant's theory as unreasonable. Looking at the totality of the evidence, including the trial court's finding that appellant was not credible, it was reasonable for the trial court to discard appellant's theories of innocence.

- 8 -

Based on the evidence before the trial court, this Court cannot say that the evidence was insufficient to prove that appellant had the requisite intent or acted with the malice necessary to prove the offense charged.  When considering the accused's conflicting evidence, and affording the Commonwealth all reasonable inferences from the evidence it presented, we find that the trial court was not plainly wrong and had ample evidence to support its finding that appellant was guilty of the offense of malicious wounding.  Thus, we affirm the decision of the trial court.

<u>Affirmed.</u>