COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Raphael and White

CURVIN DANIEL ROY, JR.

v.        Record No. 1906-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE KIMBERLEY SLAYTON WHITE
JANUARY 20, 2026

FROM THE CIRCUIT COURT OF LANCASTER COUNTY
John S. Martin, Judge

(Charles E. Haden, on brief), for appellant.

(Justin M. Brewster, Assistant Attorney General; Jason S. Miyares,[1]
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Curvin Daniel Roy, Jr. of driving with a

suspended license, aggravated malicious wounding, and felony hit and run.  On appeal, Roy

contends that the evidence is insufficient to support the aggravated malicious wounding and the

felony hit and run convictions.[2]  We disagree with Roy's assertions and affirm the trial court's

judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  *Meade v. Commonwealth*,

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument."  *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469 472 (2018)). "Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (quoting *Gerald*, 295 Va. at 473).

On the afternoon of September 7, 2023, Kelly Goode and Roy argued and ended their romantic relationship. Later that evening, Goode drove to Roy's father's house to put Roy's belongings in the mailbox. Afterwards, she left the house and turned onto a two-lane road for the return drive. As she drove, Roy suddenly appeared and drove his car in the opposite lane of travel and pulled alongside Goode's car. He began "screaming and hollering" at Goode, yelling "all kinds of different profanity, just derogatory things: [s]lut, whore, . . . just every name you could possibly think of."

As she neared a service station, Roy blocked Goode's access on the road. She turned around and began driving back in the direction of Roy's father's house. Roy followed. They stopped at the house and argued. Goode left the house in her car, but Roy chased her again and blocked her access. As Goode turned around again, Roy drove his car into the driver's side of Goode's car. Goode lost consciousness from the collision. When she regained consciousness, she heard Roy screaming and saw him walking around outside her car. Then, "nobody was there."

On the night of the collision, Lilian Skay was at home with her boyfriend, who was friends with Roy. During the night, Roy called Skay's boyfriend and he and Skay drove to Roy's father's house and picked up Roy. As they were leaving, Skay saw Goode's car in the road. As they got closer, Skay saw Goode in the driver's seat and stated that "she looked to be deceased." She approached the car and spoke with Goode. Skay found Goode's phone for her and then traveled back home with her boyfriend and Roy. There, she called 911 and reported the crash. She allowed Roy to stay with them for a day or two after this, but upon learning "what happened," she confronted Roy and told him to leave.

- 2 -

Virginia State Trooper Drayton responded to the crash scene during the night it occurred, arriving just after midnight. He saw a Dodge Neon in the roadway, perpendicular to the lanes of travel. A Toyota Solara was off the roadway and crashed into the trees. The Toyota driver was not on the scene. Goode was trapped in the Dodge and had to be extracted by the fire department. She was then transported to the hospital by helicopter. The Dodge had been struck between the driver's door and rear passenger door. The Toyota had "heavy front-end damage," and Trooper Drayton found two summonses for Roy inside the car.

Before trial, the parties agreed to several stipulations, including that Roy acknowledged he was driving the Toyota at the time of the crash, that he denied that the accident was intentional, and that he acknowledged leaving the scene, but stated it was for the purpose of getting help. He said he returned to the scene, but he left when he saw emergency personnel because he feared being arrested on an unrelated matter. The parties further agreed that Roy's phone was used to make a 911 call, but that Roy did not tell anyone that he had been involved in the collision.

At trial, Trooper Drayton explained that he was trained in accident investigation, had photographed the scene, and created a map of the crash scene. He did not observe any skid marks at the scene, suggesting that Roy did not apply the brakes before hitting Goode's car.

Nurse practitioner Tamra Hall testified about Goode's injuries. Goode suffered a broken clavicle, multiple fractured ribs, and a collapsed lung. During surgery for her clavicle injury, doctors inserted permanent plates and screws to repair the break. Hall predicted that the long-term presence of the devices would eventually cause "arthritis and likely some discomfort."

Goode described her actions on the night of the collision. She also drew a diagram on a white board. The trial court found Goode's testimony about the car chase and accident was "chaos" and that the white board diagram was "essential" in bringing order to her account of the events. Neither the white board nor an image of it was made part of the record.

Goode began speaking to Roy again in January 2024. He sent her a text message directing her to tell Skay not to say that she and her boyfriend had picked him up. He also told her to tell authorities that she was "off [her] medicines," making her incompetent to testify at trial.

Roy testified on his own behalf. He admitted that he had been convicted of 13 felonies. He stated that he saw Goode arrive at his father's house and then he attempted to stop her as she left. He followed her and continued trying to stop her. He asserted that Goode suddenly turned her car, causing him to collide with it. He claimed that he tried to seek help and denied having intentionally struck Goode's car.

Finding Roy's testimony incredible and Goode's believable, the trial court concluded that Roy "could have avoided this accident and chose not to do so." The court concluded that Roy intentionally and maliciously struck Goode's car. The court convicted Roy of both offenses. Roy appeals.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ

from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Roy argues that he did not intentionally cause the accident, so the evidence failed to prove the elements of aggravated malicious wounding. He further contends that he attempted to get help for Goode but did not have a phone with him and instead ran to find assistance.

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

Code § 18.2-51.2(A). "To be convicted of malicious wounding, the Commonwealth must prove that the defendant maliciously stabbed, cut, or wounded 'any person or by any means cause[d] him bodily injury, with the intent to maim, disfigure, disable, or kill.'" *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (alteration in original) (quoting Code § 18.2-51). "The element in malicious wounding that distinguishes it from unlawful wounding is malice, expressed or implied . . . ." *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Burkeen*, 286 Va. at 259 (alteration in original) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)).

"Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony." *Lucas v. Commonwealth*, 75 Va. App. 334, 346 (2022) (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). "This Court does not view circumstantial evidence in isolation." *Id.* at 346-47. "Rather, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind

irresistibly to a conclusion.'" *Id.* at 347 (quoting *Karnes v. Commonwealth*, 125 Va. 758, 764 (1919)).

"Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances, including the 'words or conduct' of the alleged offender." *Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (en banc) (quoting *Secret*, 296 Va. at 228-29), *aff'd*, 303 Va. 1 (2024). Indeed, "[i]ntent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). "In determining a defendant's intent, '[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Id.* (alteration in original) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

The "conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness's] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "Where credibility issues are resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010). Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled

to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018).

Here, the evidence proved that after arguing with Goode, Roy followed her in his car as she traveled away from his father's home. Roy drove in the on-coming lane of traffic to pull beside Goode as he berated and cursed at her, demonstrating his animosity towards her. Roy blocked Goode's way, forcing her twice to turn around to escape him. But Roy persisted. He continued to follow her, impeded her travel, and then purposely struck her car, seriously injuring her. The lack of skid marks at the scene indicated that Roy had not applied his brakes and supports the court's conclusion that he intentionally struck the driver's side of Goode's car. The totality of the evidence supports the trial court's finding and we do not disturb it on appeal.

Code § 46.2-894 provides, in pertinent part, that the "driver of any vehicle involved in an accident in which a person is killed or injured . . . shall immediately stop as close to the scene of the accident as possible . . . , and report his" identifying information. Further, the "driver shall also render reasonable assistance to any person injured in such accident, including taking such injured person to a physician, surgeon, or hospital if it is apparent that medical treatment is necessary or is requested by the injured person." *Id.* A violation of the statute that results in "injury to or the death of any person" is punishable as a Class 5 felony. *Id.*

Roy argues that he was not required to provide Goode with his identifying information because she already knew who he was and how to contact him. He also asserts that he did not have a phone with him and left the scene only to seek help after the collision.

In this case, Roy's car was disabled during the crash and, although Roy remained at the scene briefly, he did not attempt to assist Goode and left the scene without contacting help. Although he stated he did not have a phone, Roy made no attempt to obtain a phone from Goode to call for help if she needed it. Instead, Roy returned to his father's house, where he called his

friends. Further, although the parties stipulated that Roy's phone was used to eventually called 911,[3] there was "no evidence that he told anyone that he was involved or anything of that nature." Code § 46.2-894 specifically requires that the driver "report his name, address, driver's license number, and vehicle registration number forthwith . . . ." No evidence demonstrated that Roy provided the required information to Goode or to the police.

Roy's argument that because Goode knew him and how to contact him, he was not required to provide the required information is unavailing. "The identification requirement is intended to facilitate accident investigation and to preserve public order." *Johnson v. Commonwealth*, 14 Va. App. 769, 771 (1992). Roy "places too narrow a construction on the statute. It addresses more than the relationship between a driver and the victim of an accident. The identification requirement is intended to facilitate accident investigation and to preserve public order." *Id.* The fact that Goode knew Roy did not alleviate him of his duty to report and render assistance. Thus, we find no error with the trial court's conclusion that Roy violated Code § 46.2-894.

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Roy was guilty of aggravated malicious wounding and felony hit and run.

CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*

---

[3] Skay testified that she made the 911 call.